1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9   ERIC RACHNER, an individual, and DAVID
     HULTON, an individual,

10                              Plaintiffs,

11

12                    vs.

13   SEATTLE POLICE DEPARTMENT and CITY
     OF SEATTLE, a Washington municipal
     corporation; MICHELE LETIZIA and JANE

14   DOE LETIZIA and the marital community
     composed thereof; BRETT SCHOENBERG and

15   JANE DOE SCHOENBERG, and the marital
     community composed thereof; and SETH

16   DIETRICH and JANE DOE DIETRICH and the
     marital community composed thereof;

17

18                              Defendants.

KING COUNTY SUPERIOR COURT
CAUSE NO. 11-2-34597-1SEA

VERIFICATION OF STATE COURT
RECORDS

19                              **VERIFICATION**

20          The undersigned hereby declares the following:

21          1.       The undersigned is counsel for defendant City of Seattle.

22

23

VERIFICATION OF STATE COURT RECORDS - 1

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

2.       Pursuant to CR 101(b), attached are true and correct copies of all records and proceedings in the Superior Court of King County, Washington, received by defendant City of Seattle in the above-entitled action, Cause No. 11-2-34597-1SEA;

| Exhibit | Document |
|---------|----------|
| 1 | Plaintiff's Complaint; |
| 2 | Order Setting Civil Case Schedule |
| 3 | Case Information Cover Sheet and Case Assignment Designation; |
| 4 | Summons; |
| 5 | Notice of Appearance; |
| 6 | King County Superior Court Docket, Cause No. 11-2-34597-1SEA. |

DATED this 18th day of October, 2011.

PETER S. HOLMES
Seattle City Attorney

By:     *s/Brian G. Maxey*
        *s/Dominique' L. Jinhong*
        Brian G. Maxey, WSBA #33279
        Dominique' L. Jinhong, WSBA #28293
        Seattle City Attorney
        600 4th Avenue, 4th floor
        P.O. Box 94769
        Seattle, WA 98124-4769
        Phone – Brian Maxey: 206-733-9001
        Phone – Dominique' Jinhong: 206-684-8251
        FAX:  206-684-8284
        Email:  brian.maxey@seattle.gov
                dominique.jinhong@seattle.gov

        Attorneys for  Defendants

VERIFICATION OF STATE COURT RECORDS - 2

PETER S. HOLMES
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

EXHIBIT 1

RECEIVED

11 OCT -7 AM11: 14

CITY OF SEATTLE
MAYOR'S OFFICE

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

ERIC RACHNER, an individual, and
DAVID HULTON, an individual,

                        Plaintiffs,

vs.

SEATTLE POLICE DEPARTMENT and
CITY OF SEATTLE, a Washington
municipal corporation; MICHELE LETIZIA
and JANE DOE LETIZIA and the marital
community composed thereof; BRETT
SCHOENBERG and JANE DOE
SCHOENBERG, and the marital community
composed thereof; and SETH DIETRICH
and JANE DOE DIETRICH and the marital
community composed thereof;

                        Defendants.

No. 11-2-34597-1 SEA

COMPLAINT FOR FALSE
ARREST, MALICIOUS
PROSECUTION, CIVIL
RIGHTS VIOLATIONS
AND SPOLIATION OF
VIDEO EVIDENCE

COME NOW plaintiffs and through counsel, allege as follows:

## INTRODUCTION

1.     This is a complaint for false arrest, malicious prosecution, and civil rights

violations under 42 USC 1983, arising from individual defendants' October 18, 2008 illegal stop,

search and arrest of plaintiffs, later malicious prosecution of plaintiffs, and fabrication of

evidence and loss or concealment of video showing the truth, all facilitated and caused by the

policy and custom of the City of Seattle ("City"), through its Seattle Police Department (SPD), to

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 1

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA 98103
(206) 419-4385

1  abuse citizen rights and to fail to properly discipline and supervise officers, including through

2  various SPD policy and customs to conceal videos showing officer misconduct, to falsely tell

3  people videos do not exist when they do, and to conceal logs about videos and other information

4  needed by citizens seeking to challenge officer versions of events by getting the SPD videos of

5  the encounter.

6       2.     SPD has a policy and custom of ensuring its existing in-car video system is not

7  used to show officer misconduct, including through allowing officers to not take video of most

8  encounters, and allowing a 80% violation rate of the regulations requiring officers to take video;

9  policy to conceal video, and make false statements that SPD has no video, when it does; SPD

10 policy to conceal in nearly every case since 2001 the activity logs for video, that show the

11 existence of video or acts of concealment or loss of video, or spoliation of video evidence; SPD

12 policy to conceal that its system often loses video suddenly, and it has had multiple sudden

13 losses of video, including a loss of some 14,221 videos in December 2008; and other policies to

14 ensure the video system is used to conceal officer misconduct rather than reveal it.

15      3.     Such policies and customs turned the video system into a system of nondisclosure

16 and concealment of misconduct, violating clear promises to the public that the in-car video

17 system would be used to assure proper conduct by officers.  Rarely since 2001 have notable

18 events of officer misconduct been revealed through the SPD's in car video system; most were

19 only revealed because third parties happened to get  video.  The policies and customs challenged

20 in this suit are a massive failure to discipline and supervise, resulting from the institutional and

21 high level subversion of the video system, that turned it into a means of hiding and concealing

22 officer misconduct, rather than a way to reveal it and remedy it.

23

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 2

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

4.     SPD also operates its Office of Professional Accountability in the same way: to facilitate and allow misconduct through wrongful exonerations, or not finding a citizen complaint is sustained (the term exoneration will be used herein to refer both to actual exoneration and OPA findings of not sustained); keeping exoneration files secret, and using OPA to officially legitimate wrongful conduct, as OPA did in plaintiff Rachner's case.

5.     SPD accordingly has turned the two systems needed for effective officer discipline into systems that promote misconduct. Misconduct is promoted when officers know the video showing it will not come to light, or can be concealed, or only rarely will come to light; and OPA will exonerate, despite video showing wrongful conduct; as happened here.

6.     OPA and the video system promoted misconduct by keeping it in the dark, instead of bringing it to light.

7.     This suit seeks damages for plaintiffs, and injunctive relief to change these policies and customs and ensure that the video and OPA systems work as they are supposed to work: to reveal and remedy officer misconduct, rather than to conceal it.

### PARTIES, JURISDICTION AND VENUE

8.     Plaintiffs Eric Rachner and David Hulton are each owners of computer security firms, and each separately resides in King County Washington.

9.     Each plaintiff was falsely arrested on October 18, 2008 by defendant officers, then maliciously prosecuted due to efforts of defendants, until months later the City dismissed charges against plaintiffs in 2009.

10.     During their prosecution and later, SPD repeatedly denied plaintiffs videos of their arrests, which show the officers' wrongful conduct and the fabrication of false versions of events on the incident report.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 3

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

11.     Today, SPD is still concealing one or two videos of the arrest incidents, despite plaintiffs' numerous requests.

12.     Defendant City is a municipal corporation; SPD is a department thereof and the City and SPD legally "reside" in King County being located and doing business there.

13.     Defendant officers Michele Letizia, Brett Schoenberg and Sergeant Seth Dietrich were or are at all relevant times employed by the SPD as police officers; at all relevant times they acted under color of law; on information and belief they reside in King County, Washington; and they falsely arrested plaintiffs on the night in question then maliciously procured their prosecution.

14.     Letizia falsely arrested Rachner for obstruction, when Rachner lawfully refused to give his identification.  Schoenberg falsely arrested Hulton, for assault, when there was no probable cause for said arrest, and the officers obtained a description that did not match Hulton.

15.     Dietrich on information and belief screened and approved both arrests and falsely arrested both plaintiffs.

16.     The three officers conspired to effect such false arrests, violate plaintiffs' rights, fabricate evidence including on the incident report, and hide and conceal video; and to procure the malicious prosecution of plaintiffs, acting intentionally and maliciously, secure in the belief that SPD policies and customs would assure video showing the truth would not come to light, giving the officer freedom to violate rights and fabricate evidence.

17.     The wrongs complained of arose or were in King County Washington and concern public officers there, and jurisdiction and venue are appropriate in King County under RCW 4.24.020 and .025 based on parties' residence or place where the torts arose.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 4

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

**18.**     Plaintiffs have filed claim notices and waited 60 days prior to filing suit. Plaintiffs have waited until nearly three years from the false arrests because SPD has continuously hidden and concealed from plaintiffs videos of their arrest and other evidence of policy and custom which plaintiff Rachner has had to work to obtain, for years, overcoming SPD resistance at every stage.

## FACTS

### SPD Policy and Custom To Violate Rights

**19.**     SPD has had a policy and custom to violate citizen rights, including false arrest, arrest for not giving identification, excessive force, and misuse of the obstruction statute, facilitated and maintained through policies making it difficult for the arrestee and others to obtain video of the events or remedy them through complaints to OPA. The policies and customs challenged in this suit were in place prior to 2008 and continue to the present, and allowed and caused the officers sued herein to violate plaintiffs' rights.

**20.**     SPD had a policy and custom to violate a citizens' right to not give identification.

**21.**     Since 1982 in Washington State an officer cannot lawfully arrest a citizen not driving a vehicle for his or her refusal to give identification; this was clearly established in *Miranda v. Arizona*, 384 U.S. 436 (1966); *Terry v. Ohio*, 392 U.S. 1 (1968) ("refusal to answer furnishes no basis for an arrest") and particularly in *State v. White*, 97 Wn.2d 92 (1982) ("detainee's refusal to disclose his name, address, and other information cannot be the basis of an arrest"); then again in *State v. Hoffman*, 35 Wn.App. 13 (1983) (refusal to produce identification after lawful Terry stop is not obstructing); and other cases including *State v. Biegel*, 57 Wn.App.192 (1990) (right to silence includes being silent as to one's identity).

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 5

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA 98103
(206) 419-4385

22.     SPD has had a policy and custom to violate *State v. White*; to fail to properly teach officers about the right to not give identification; and to fail to discipline officers who violate said rights; and to wrongfully exonerate said officers in OPA investigations in such cases when citizens complain, even where video shows the officer misconduct, thus officially implementing the illegal policy to arrest for not giving identification.

23.     The SPD officer manual and training is and was improper and defective, failing to give officers the *White* case rule, or discuss the right to not give identification.

24.     The portion on "Social Contacts, Terry Stops, and Arrests" is only 4 pages and was so in 2008; it states in section 6.220 entitled "Social Contacts, Terry Stops, and Arrests" that "If the individual being questioned fails to accurately identify themselves or if information is gathered to further validate the officer's suspicion, the detention may be extended," without discussion of the right to not give identification; and this is an official policy that officers may arrest and detain for refusal to give identification.

25.     SPD has had a policy and custom of allowing officers to misuse the obstruction statute, including interpreting at their discretion, making false arrests, arresting for not giving identification, and arresting people for lawful speech to officers including protest of illegal officer actions or misconduct or questioning same a/k/a "contempt of cop."

26.     Sergeant Sean Whitcomb is a policy maker for SPD when speaking for the department to the media and officers may take his statements as official policy.  In April 2010, Whitcomb stated to reporter Eric Nalder that SPD officers are allowed to interpret obstruction statutes according to their own "point of view"; this was official policy that officers may abuse the obstruction statute.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 6

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

27.     On information and belief, SPD has often arrested persons for refusing to give their identification in years prior to 2008, then SPD has exonerated or failed to properly discipline such officers or teach them the rule of *White*.

28.     In 13 months prior to and including October 2008, this happened repeatedly including the following on incident reports and known to SPD leaders: (a) 07-409252, Angelo Peterson when picking up  a jacket on the street, arrested for not giving identification ; (b) 07-441371, unknown person near suspicious persons, arrested for not giving identification; (c) no. 07-466197, process server arrested for not giving identification; (d) no. 08-290457, Jeremy Peck, arrested for not giving identification; (e) no. 08-335821, Howard Mulvihill, arrested for not giving identification; (f) 08-341044 SPD accosts  man then arrests for not giving identification; and (g) 08-392375, arrests of Rachner and non-party Adam Currie for not giving identification.

29.     On information and belief, wrongful arrests for not giving identification occurred at similar or higher rates and were shown on incident reports for years prior to October 2008 and were known to SPD leaders.

30.     SPD officers illegally threatened citizens with arrest for not giving identification in many other cases; with SPD then exonerating or failing to properly discipline such officers; this is shown on incident reports and known to SPD leaders.

31.     SPD has had a policy and custom of allowing and facilitating excessive force; this is part of and causes the policy and custom of wrongful arrests without excessive force, too.

32.     In 397 excessive force complaints to OPA, from January 1, 2008 to about May 2011, OPA found no misconduct or exonerated the officer 100% of the time.  On information and belief, many such findings were wrongful, and a 100% rate of non-sustained findings is "too good to be true,"  and indicates the OPA system was dysfunctional and covering up misconduct.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 7

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

**SPD Policy and Custom to Use Video System to Conceal Misconduct**

33.     SPD has had a policy to allow and foster such abuses of citizens through policies, practices and misfeasance concerning the in car video system, including allowing massive failure to take video by officers, concealing video, losing or spoliating tens of thousands of videos, and hiding and concealing activity logs in nearly every case since 2001, where such logs show acts of concealment, loss or spoliation of video or other facts SPD should have disclosed.

34.     SPD knew, and told the public, the in car video system was needed for and would operate to ensure officers did not commit misconduct.  SPD leaders knew for this to happen, SPD would have to overcome officer resistance to videos; and ensure videos were taken, and then disclosed, to persons challenging officer versions of events.

35.     SPD then implemented the system and related practices to ensure videos are not made, or kept, or are concealed and not disclosed to persons claiming video will prove officer misconduct.  SPD subverted the purpose of the in car video system and turned it from a system to disclose and remedy misconduct, into a system that operated to conceal and promote misconduct.

36.     SPD since 2001 has spent millions of dollars on the video system.

37.     SPD told the public the system would help assure officers behave properly many times, including the following: (a) On February 25, 2002 Deputy Chief John Diaz, then commander for the new video system, told the public that the video system was "a way to increase community confidence in the department" (see http://www.seattlegov/mayor/newsdetail.asp?ID=2462$dept=40); (b) Mayor Nickels stated in a press release of July 18, 2002 that the video system was a "strategy to enhance police accountability and improve police-community relations; he stressed video in "ALL patrol cars"

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 8

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

was to "improve public confidence and trust in our police"; "The goal is simple: increased accountability" (see http://www.cityofseattle.net/mayor/newsdetail.asp?ID=2784&dept=40); (c) elsewhere this release stated a goal of the project was to "Ensure accountability"; (d) the SPD Manual for officers in section 17.260 captioned "In-Car Video" stated an official purpose of the system is "To establish video data accountability"; and (e) on August 20, 2007, chief Gil Kerlikowske wrote a memo to the Mayor's Police Accountability Review Panel, stating in response to citizen complaints about officer misconduct, "In-car video cameras were installed."

38.     Prior to installation SPD command knew, and it was true that many officers had opposed installation of the video system fearing it would work as intended; and officers knew if they were allowed to not take video or could hide it, or if the system did not disclose video to persons challenging officer versions of events, the system would not work as intended to disclose officer misconduct.

39.     Since 2001, officers have resisted attempts to have greater disclosure and SPD has had until 2011, a policy to bar disclosure of video to supervisors absent a formal discipline charge; in normal practice a supervisory officer was by policy not permitted to review videos made by a subordinate.

40.     SPD has had a policy and custom that allows officers to simply not take video.

41.     The SPD officer manual required video to be made in most encounters with citizens, and required officers to note existence of video in incident reports. Section 17.260 thereof states "Officers will activate the video equipment, including microphone, prior to making citizen contacts"; "If reasonable to do so, they [officers] will record their approach to crime scenes"; "Before starting patrol, the video camera will be positioned to properly record traffic stops, and the wireless microphone will be synced to that camera unit and attached to the

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 9

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA 98103
(206) 419-4385

1  officer's person in a manner suitable for its most effective use"; "the officer with the operational

2  microphone will be primary, whenever feasible" and "When a custodial arrest is made, the

3  General Offense report will indicate the contact was recorded."  In practice, though, SPD has had

4  a policy and custom of allowing officers to *not* take video, or if it is taken to not upload it, or to

5  not report it on incident reports, all to facilitate officers to avoid taking video, or to hide video,

6  and defeating the purpose of video to show officer misconduct.

7      42.    SPD created this policy and custom by allowing massive failure to take or note

8  video, and not imposing significant discipline in response to violations of such regulations.  After

9  2001 SPD often allowed up to one third or one quarter of officers in patrol cars to simply not

10  take video on the ground they did not have video training.

11     43.    This and the failure to enforce regulations requiring video told all officers that

12  video is optional; this allows officers committing abuses to either not take video or to conceal it

13  if they took it and it would show misconduct.

14     44.    There are at SPD 229 incident reports for all obstruction arrests in the period

15  October 2007 to January 2008.  In these reports there are 131 reports by officers in patrol cars,

16  that is, with video; and in this subset, some 109 reports do not state there was video.

17     45.    This is an 83.9% violation rate of the above mentioned regulations.

18     46.    This was known to SPD leaders who did not take proper action in response.

19     47.    On information and belief, the same or similar 84% violation rate took place and

20  was evident to leaders, in other periods since installation of the video system.

21     48.    Obstruction like many other crimes happens in the presence of an officer.

22     49.    Under the video regulations the vast majority of obstruction arrest reports should

23  indicate there is video; yet most indicate there is not; and SPD leaders knew this.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 10

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

50.     SPD leaders in allowing 84% of all obstruction arrest reports to not note video, created a policy giving officers the option to not take video, allowing officer abuses, and contrary to the promise to citizens.

51.     In October 2007 SPD leaders changed the incident report form by removing a box for noting existence of video on the form.  This helped officers to not take video, or to not note it on the form.  That video is not noted on the form leads citizens to not seek video even if it exists.

52.     When video is made, SPD has had a set of policies and customs to conceal, lose, destroy or hide video and facts about video, and to not disclose video or to hinder and burden attempts to get video; to ensure the system does not reveal misconduct.

**Policy & Custom to Conceal Video, Activity Logs and Loss of Thousands of Videos**

53.     SPD has had a policy and custom to falsely conceal video when it is requested, including without limitation failing to provide video and stating video does not exist, when it does; refusing to disclose the activity logs for video in most cases since 2001 including where such logs would show video does exist when SPD said it does not exist; failing to disclose copies of video given to OPA or city attorneys; falsely or incorrectly stating there is no video when SPD does have video on the hard drive or in a copy; failing to have proper policies to look for video; not allowing public records officers or attorneys look on the activity logs; improperly disclosing some but not all video; failing to tell citizens the SPD system lost thousands of videos; falsely using signatures of policy makers such as John Diaz to bolster credibility of false statements there is no longer any video; or similar acts of concealment, false and incorrect statements and nondisclosure of video or activity logs.

54.     The activity logs are the electronic files showing if a video is on the system or not or if it was lost or removed.  They thus are key to acts of concealment or loss or spoliation of

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 11

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

video by SPD.  They show SPD had video previously or when it was requested and thus are the key item of evidence to show SPD wrongfully failed to disclose or concealed video, or video was removed or lost.

55.     The logs also show data such as dates of video creation, when officers viewed video, if they were copied ("exported") and to whom (e.g, to OPA or city attorneys) (thus showing where the City has copies) and information about a case useful to a defendant.

56.     SPD since 2001 has had a policy and custom to not disclose and to hide the existence of activity logs from the public, the media and persons challenging officer versions of disputed events.  This was , to help ensure the video system is not used to show officer misconduct, in particular, by hiding and concealing SPD's concealing or nondisclosure of videos and loss and spoliation events.

57.     Activity logs were requested in thousands of cases wherever  a request is made for all information or electronic information about an arrest, yet SPD routinely did not disclose activity logs.

58.     The logs show existence of a video, badge number of the officer creating the video; removal or loss or corruption of video; retention command; badge numbers of officers reviewing videos and when; and a notes or narrative field containing individualized data or comments about the incident by the officer creating the video.

59.     Oftentimes disclosure of logs was required when SPD did not disclose them in thousands of cases.

60.     This policy of not disclosing logs and concealing them frequently operated to deprive defendants or citizens of information needed to show officer misconduct or defend a

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 12

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

charge, and violated disclosure obligations or obligations under *Brady v. Maryland,* 373 U.S. 83 (1963).

61.     On information and belief, SPD has not disciplined any officer for the failure and refusal to disclose activity logs.

62.     SPD has had on information and belief a policy and custom to keep videos and the logs concealed from city attorneys and public records officers, who do not even review logs to see if videos exist or were copied.

63.     SPD has had a policy to have only a small handful of video unit officers look at logs.  This allows SPD to frequently say there is no video when there is, because public records officers or attorneys and others not wearing a uniform are not allowed to look at the logs. Alternatively, SPD only has allowed such people to look at logs recently.

64.     SPD has lost tens of thousands of videos from its system.  SPD  has concealed this type of spoliation of evidence event from the public, the media and persons seeking video.

65.     Since installation, SPD's video system has often experienced sudden non-routine loss, or willful destruction, of video, each year.  Since 2001 SPD has suddenly lost or had removed tens of thousands of video and has failed to tell the public this.

66.     At the end of December 2008, the SPD video system lost 14,221 videos suddenly or they were on information and belief removed improperly from the system.

67.     At that time 14,221 videos were 22% of the videos extant on the system.

68.     SPD has hidden this fact from the public and defendants who might need those videos to prove what happened in their encounter with officers, or who might be able to point to the fact SPD *lost* the video, as an exculpating circumstance or evidence that the City was required to disclose under *Brady.*

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 13

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

69. In April 2009, the system lost 32,502 videos suddenly or they were improperly removed. These were later restored; and SPD on information and belief concealed these facts from the public or defendants.

70. Other events of sudden video loss in the period July 2008 to July 2011 included: in December 2010 the system lost 1,008 videos or they were improperly removed; on January 13, 14, 18, 19 and 22, in the year 2011, the system lost or there was improper removal of 78, 51, 14, 29 and 39 videos respectively; and on June 24, 2011 the system lost or there was improper removal of 89 videos; and SPD has hidden these facts from defendants and the public.

71. On information and belief, SPD lost videos or they were improperly removed at other times since 2001; at the same rates and frequency as in the July 2008-July 2011 period.

72. SPD's concealment of logs that show loss or removal or concealment of video violated legal duties in many criminal cases; and was to cover up SPD's unlawful responses to citizen or defendant requests for video, violations of Brady obligations. Many persons would or could use such loss or concealment or spoliation events, to challenge officer versions of events, show their innocence, or after being convicted or in jail could still use such loss or spoliation events to overturn convictions or get out of jail.

73. On information and belief, SPD has not properly disciplined and has not disciplined anyone for these massive loss or removal events or concealment of same.

74. SPD has many other policies and customs to lose, or remove, video.

75. SPD routinely destroys and purges log entries and corresponding videos three years after creation when it could easily keep such evidence; it does so to hide officer misconduct.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 14

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA 98103
(206) 419-4385

1   76.   By this practice, SPD routinely destroys evidence of prior concealment, loss or

2   spoliation of video evidence; and that this is a policy or custom.

3   77.   SPD's policy to keep these video losses or removals concealed continues to the

4   present despite SPD leaders being told by Rachner in 2010 that SPD has wrongfully concealed or

5   failed to disclose video in other cases, and the logs are needed to audit this; SPD's continued

6   purging of video and log entries is daily removing evidence that persons could use to show SPD

7   wrongdoing.

8   78.   SPD has and is concealing and purging the log entries as part of the policy to

9   cover up and conceal wrongdoing; this helps conceal prior violations of public disclosure laws or

10  *Brady v. Maryland* obligations.

11  79.   SPD through purging log and video data that could be cheaply retained has had

12  and today has a policy at the highest level, to conceal officer misconduct, conceal videos and

13  conceal the concealment or loss of videos, all to prevent the system from being used to show

14  wrongdoing by officers.

15  80.   In addition to loss or removal events and purging, SPD has had other routine and

16  official policies to conceal or not disclose video or hinder those seeking it.

17  81.   SPD has had a policy and custom to not look at activity logs or for exported

18  copies to see if video exists.

19  **SPD Policy to Not Disclose Video**

20  82.   SPD by policy or custom simply tries to deny access to video as much as possible,

21  citing generic policies such as a policy that videos are only kept 90 days in denying requests for

22  video, without looking for the video on the log; or by citing any potentially applicable exemption

23  to disclosure on a blanket basis without individualized review; or wrongfully.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 15

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

1   83.     For example, SPD routinely and by custom or policy denies any request for video

2   about a third party.  This helps ensure the media or citizens acting as watchdogs do not get hold

3   of video showing officer misconduct.

4   84.     In this context where someone seeks video about someone else, SPD cites privacy

5   reasons.  But in fact often there is no privacy at stake as in the vast majority of cases, the video

6   concerns non-private and public interactions between the citizen and the officer.  SPD also cites

7   effective to law enforcement without particularized review or other exemptions without proper

8   basis.

9   85.     SPD has not properly funded nor trained its public records staff to make the

10  system function as needed.

11  86.     On information and belief, the public records staff was not aware of the sudden

12  loss of video when it happened, and was not even aware of the logs until Rachner discovered

13  them then requested certain logs from public records staff in 2009.

14  87.     SPD also removes or destroys video as per routine practices including removal

15  after three years and also eliminating all video 90 days after creation unless there is a pending

16  criminal, civil, or administrative case.

17  88.     This deprives many people of video following suspected officer abuse.  If the

18  citizen is not charged and fails to demand video quickly, or is unaware or without means to pay a

19  lawyer, or simply fails to hire a lawyer immediately, the 90 day rule works to ensure video is no

20  longer available.

21  89.     SPD does not have a policy to honor where a citizen's demand video be kept.

22  SPD has a policy to ignore and deny a citizen's demand that video be kept.

23

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 16

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

90.    SPD continuously destroys extant video located in the in car unit; the in car units continuously record video when the car is in use, and keep the video until overwritten which is sometimes days later.   SPD policy and custom is to both not look for video in this location, and to let this video be lost or spoliated routinely.

91.    Officer Benjamin Kelly's in car unit took video of his encounter with Maurice Clemmons on December 1, 2009.  SPD commanders later recovered that video from the unit in the vehicle using nonroutine efforts, because it had not yet been overwritten.  There was no system in place to look for this kind of video record, in the car.

92.    When a citizen complains about an officer and demands video, SPD policy and practice is to not look for video on the in car unit.

93.    The foregoing policies, practices and customs are part of the general policy and custom to prevent video from showing officer misconduct.

94.    SPD has not fired a single officer or imposed any serious discipline for documented cases of SPD or officer failure to take video, concealment of video, misstatements about video, concealment of logs, or loss of thousands of video, or concealment of said events from defendants or the public.

95.    On information and belief, SPD has a secret back up system that came into operation in or before April 2009 and that has not been disclosed to the public nor used to find video to respond to requests for video.  On information and belief in two days following the loss of 32,502 videos in April 2009, SPD was able to and did restore some 46,009 videos, including those suddenly lost in April and others that had been deleted under the 90 day policy.  SPD has kept these facts concealed to hide the backup system and to continue to conceal the recurrent

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 17

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

1  losses of video. Said restorations are shown in data given to Rachner discussed below and could

2  not happen unless there was some backup system.

3      96.    On information and belief, SPD has not properly used such duplicate backup

4  system to look for videos or disclose same.

5  **SPD Policy and Custom to Misuse OPA and Wrongfully Exonerate**

6      97.    SPD has had a policy or custom to misuse OPA to wrongfully exonerate officers,

7  set policy allowing illegal acts and keep exonerations files secret from the public, to ensure

8  officer conduct is validated wrongfully or keep misconduct from coming to light.

9      98.    In 2001, SPD created the Office of Professional Accountability to help assure

10  officers would act properly to citizens.

11      99.    SPD and the City at that time set an official policy to not let OPA files leading to

12  exonerations be disclosed, and such files have not been disclosed.

13      100.    The City and SPD have an official policy and custom including under SMC

14  3.28.800 and otherwise, to keep files leading to exonerations concealed; and even that OPA must

15  maintain confidentiality of files as if OPA were in an attorney client relationship with the

16  officers.

17      101.    This and other practices deprive OPA of independence and put the focus on

18  keeping OPA in the function of serving officers, not the public, and keeping exonerations secret

19  including wrongful exonerations.

20      102.    SPD has kept OPA work or as much of it as possible secret and does not disclose

21  to citizens or the media, OPA files exonerating officers.

22      103.    OPA as official source of discipline officially sets policy at SPD.

23

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 18

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA 98103
(206) 419-4385

104.     On information and belief, OPA wrongfully has exonerated many officers or imposed slight discipline; and legitimated misconduct, by declaring it is in accord with policy.

105.     Such policies and customs facilitate and protect officer misconduct and sets policy to allow wrongful acts.

106.     OPA investigated complaints about arrest for not giving identification many times prior to October 2008, and since, and on information and belief, has rejected the citizen's complaint, exonerated, or failed to reach a finding of "sustained," in all or nearly all cases, setting an official policy to allow such unlawful arrests.

107.     By making the OPA disciplinary function largely secret and not independent, SPD has created a culture of secrecy that allows misconduct to flourish in the dark, and a defective and improper system of discipline.

**Illegal and Malicious Stops, Arrests and Prosecution of Rachner, Hulton, Currie**

108.     The above policies and customs caused the wrongful acts directed at plaintiffs.

109.     On October 18, 2008, on Boylston Avenue, in Seattle's Capitol Hill neighborhood, plaintiffs Rachner and Hulton, and non-party Adam Currie were falsely arrested by the individual defendant officers.

110.     That night, plaintiffs and others were participating in Urban Golf, a group activity in which plaintiffs and others peacefully assembled, many in expressive retro attire, and walked from bar to bar, in small teams of about four or five, putting toy foam balls short distances, on a marked course on sidewalks.  This conduct and attire expressed countercultural values or values of Capitol Hill urban life, active use of urban space, as compared to commercial or passive entertainment.  Plaintiffs engaging in this activity with this group were engaged in expressive

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

1  conduct protected under the First Amendment and the due process liberty interest of walking

2  about the city in which they lived.

3       111.    The conduct was not dangerous or disruptive, nor criminal. The toy balls rolled

4  on the sidewalk and any occasional lift given to a ball did not create appreciable danger. The

5  balls used were the kind sold to children for them to shoot at each other.

6       112.    One Marcus Johnson gave his ball some lift and it lightly impacted Gabriel Clark

7  without injuring him nor assaulting him, comparable to a negligent bump given on the shoulder

8  by a passerby. Gabriel Clark spoke with Johnson and was angry as apology was not made.

9  Clark called 911 and complained about the group in general without claiming assault or

10  identifying any "suspect." The SPD person taking the call did not even ask for an identification

11  of any suspect.

12       113.    SPD's officers Letizia, Emily Clark, and Schoenberg arrived. Then, officer Jose

13  Silva arrived a few minutes later, followed by officers Benjamin Archer and Dietrich.

14       114.    On information and belief, officers arriving first, that is, Letizia, Clark and

15  Schoenberg, started off by violating the video regulations in failing to activate the retain function

16  on their in car units so as to record their conversation and events from the start. Their videos

17  were turned on after they arrived at the scene.

18       115.    The officers spoke to Gabriel Clark but did not get any identification of any

19  suspect at that time.

20       116.    At 8:05:54 pm (all indications of time are taken from videos later obtained) they

21  unlawfully stopped and seized by show of force a group of Urban Golfers including Rachner and

22  Hulton. This was illegal and lacking reasonable suspicion or probable cause; and said officers

23

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 20

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA 98103
(206) 419-4385

1   were acting intentionally and maliciously to violate clearly established liberty and speech rights

2   to punish Urban Golf and its expressive speech activity.

3       117.    The detention came with the officers driving up to the group with overhead lights

4   on (indicating the video was only then turned on) and other show of force.

5       118.    At 8:06:38 pm, Officer Clark told Letizia that Rachner would not answer

6   questions and Letizia said, "Cool, that means we get to arrest him and let him go before a judge."

7   By this Clark and Letizia violated his right to silence; silence is not a crime.

8       119.    Letizia then said to Rachner, "Today is Saturday, you won't see a judge 'til

9   Monday." This was a threat to arrest Rachner for not speaking and violated his clearly

10  established right to silence.

11      120.    At 8:11:57 p.m., Schoenberg told the group, "I don't know why you guys come to

12  Capitol Hill to do this, I understand it's part of the Capitol Hill experience, however it's not

13  going to be any more." This comment is audible on the videos made by Letizia and Clark. This

14  was an illegal order to the group to stay out of Capitol Hill and was unlawful suppression of their

15  First Amendment rights and procedural and substantive due process rights.

16      121.    Schoenberg's direction was backed by the other officers' show of force, and by

17  doing so they joined in his unlawful acts. Each knew that Schoenberg's order violated the

18  group's clearly established rights and failing to stop such violations, joined in, thereby violating

19  said rights and agreeing and helping do so.

20      122.    Subsequent wrongful actions of the officers were to implement the order to stay

21  off Capitol Hill to punish the expressive acts of Urban Golf and create some kind of criminal

22  guilt to discredit plaintiffs should they speak up about this.

23

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 21

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

123.    After this seizure, and at 8:08:50 pm, officers Letizia, Schoenberg and Emily Clark talked to Gabriel Clark, who described the person whose ball had impacted him, saying, "He's a little bit thicker [than me], like my height, with a stocking cap"; this description is shown on the tape made by officer Clark.

124.    Attached hereto as Exhibit A is a true and correct copy by screen shot from the officer Emily Clark video at the time that Gabriel Clark gave the description (8:08:50 pm).

125.    Exhibit A is a fair and accurate depiction of the scene at that time and place, and correctly shows Letizia, Rachner, Schoenberg, Emily Clark, and Gabriel Clark (in that order, from left to right) at 8:08:50 pm; and the audio on this video indicates at this time Gabriel Clark is giving the description mentioned above.

126.    Officers did not seek out a suspect matching that description at any time nor get Gabriel Clark to identify Hulton or anyone else.  At the time of the description, Rachner was standing near Letizia as shown in Exhibit A.  At this moment,  while Gabriel Clark is describing the alleged suspect, Gabriel Clark could see Rachner yet did not point to Rachner nor say he was the suspect, nor describe anyone matching Rachner.  Letizia at this time had no basis to restrain Rachner.

127.    The description given by Gabriel Clark did not match Rachner or Hulton or Currie, objectively.  Gabriel Clark's height was 5' 7" and he weighed about 180 lbs.  Rachner's height was 6'1", and his weight was 155 pounds.  Rachner was half a foot taller, and some 25 pounds less than, the person described  by Clark; Hulton was about 5'11", and weighed 140 pounds; and was four inches taller, and some 40 pounds less than, the person described by Clark. Both Rachner and Hulton had no cap or hat and Hulton also was Asian American and wore glasses.  Clark did not say the "suspect" was Asian or Asian American or wore glasses.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 22

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

128.     The mismatch between the description and Rachner or Hulton is shown on the videos of the incident.

129.     The unlawful detention continued even after Letizia, Schoenberg and Clark had the description.

130.     The description constituted additional objective information precluding any probable cause or reasonable suspicion.

131.     At 8:09 pm, Letizia furthered the illegal conduct, saying to Schoenberg and Clark, "You can just ID everyone and report them all as suspects." Schoenberg said "We really want to get all their ID's, get 'em, want to help me collect them?" These orders violated plaintiffs' and the group's rights under the First, Fourth, Fourteenth and Fifth Amendments.  The officers knew they were violating such clearly established rights and their colloquy recorded on the video reflected the violation, their knowledge and their  joint agreement to violate rights by illegally getting identifications and illegally reporting them all as suspects without individualized probable cause.  The officers acted in concert and by agreement to violate plaintiffs' rights, and knew the video showed this.

132.     At 8:09:46 pm Letizia told Rachner, "Let me see your ID, go ahead and take your ID out of your pocket."  This was an unlawful search and order to produce the wallet contrary to *State v White*.

133.     Rachner lawfully refused, saying Letizia had no legal right to get identification.

134.     Letizia repeatedly unlawfully ordered Rachner to present his identification, saying, "I do have a legal basis, so go ahead and remove your ID from your pocket" and "You have to remove it";  Rachner repeatedly refused saying, "No," and "I refuse," and "I will do no such thing."

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

1    135.    Rachner was courteous, and did not obstruct any officer nor consent to any

2    search.  Rachner's speech was First Amendment protest, petition and expression.  It angered

3    Letizia who viewed it as contempt of cop and who then acted maliciously to punish Rachner for

4    this speech.

5    136.    At 8:10:05 pm, officer Emily Clark observed this and said "I love it, I love it"

6    approving and ratifying Letizia's unlawful acts and failing to stop them.  She thereby joined in

7    violating Rachner's clearly established rights by agreement with Letizia and in a concert of

8    action and conspiracy to violate his rights.

9    137.    Letizia said "if you refuse to give me your ID, then we will arrest you for

10   obstructing," then unlawfully searched Rachner by taking his wallet out.  Letizia then falsely

11   arrested Rachner at 8:11:27 pm.  Said acts were an unlawful search and seizure and arrest, done

12   maliciously to punish Rachner for his verbal assertions of rights, and being part of Urban Golf.

13   138.    Letizia and the other officers all knew of the clearly established right to remain

14   silent, and not give identification, to not be subject to unreasonable searches and seizures, the

15   liberty right to go about the City without being ghettoized or limited as to place, or based on

16   expressive activity, and the right to speak up to an officer with correct statements of the law;

17   each acted intentionally and maliciously to violate plaintiffs' clearly established rights.

18   139.    At 8:11:27 pm, Schoenberg saw Letizia's arrest of Rachner and said "hey we can

19   always take him down, and he can go to the fingerprints section [for us to get his identification]."

20   With this approving comment and failure to stop the violation of Rachner's rights, he joined in

21   and agreed with Letizia to violate Rachner's rights widening the conspiracy.

22

23

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 24

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

140.    At about 8:17:05 pm, Letizia told officer Jose Silva that Letizia had arrested Rachner because Rachner had acted "edjumicated."  Letizia knew this was on the video and showed his improper motive to retaliate against Rachner and unlawful arrest of Rachner.

141.    Silva by failing to stop the violation of Rachner's rights joined in and ratified said violations joining the agreement and conspiracy to violate rights.

142.    At 8:18 pm Schoenberg told Letizia "I got the one guy who was actually, did the assaulting."  Letizia replied, "Oh, you found him?" and Schoenberg said, "Mr. Hulton, yeah."

143.    The above comments are shown on video Rachner has obtained but he has not obtained the Schoenberg video.

144.    The Schoenberg video on information and belief shows Schoenberg's lack of probable cause for arresting Hulton, and that the real reason for the arrest was Hulton's speaking up to Schoenberg, and Schoenberg's and the other officers' animus towards urban golf, and said video has information and commentary by Schoenberg indicating his motivations were malicious and to punish Hulton for not admitting guilt and to expel urban golf from Capitol Hill.

145.    Schoenberg's unit was recording audio and video and his overhead lights were on. The Schoenberg video was on information and belief spoliated, lost or concealed by SPD, although it was on the server or the in car unit; or it was not uploaded to the server or Schoenberg uploaded said video with an identification number of another officer, and/or the officers sued herein conspired to conceal said video.

146.    Schoenberg was primary officer at the scene.

147.    As shown on other video obtained, Schoenberg approached Hulton, accusing him of assault, saying "we know you did it." Schoenberg detained him by putting him on the squad

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 25

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

1   car then at 8:25:55 pm Schoenberg falsely arrested Hulton for assault without probable cause and

2   put him in the squad car.

3        148.    Schoenberg acted intentionally and with malice, motivated by animosity to the

4   group's expressive conduct, and in violation of what he knew were Hulton's clearly established

5   rights under the First, Fourth, Fifth and Fourteenth Amendments.

6        149.    Dietrich arrived at 8:20:15 pm.  At 8:21:53 pm, Letizia told Dietrich that Rachner

7   "here is educating me on the legal system" and "challenging the detainment, doing all that stuff."

8   Dietrich thus knew the basis of the arrest was Rachner's refusal to identify himself.  At 8:23:38

9   pm Letizia told Dietrich, "they have actually been able to identify the one that launched the ball

10  into the guy's face."

11       150.    Dietrich screened and approved Letizia's arrest of Rachner, despite being told it

12  was for refusal to give identification and despite being told by Letizia Rachner's misdeed was

13  informing Letizia about the legal system.

14       151.    Dietrich said at 8:24:44 pm, "We can ID him at the precinct, he's going to go to

15  the precinct." Dietrich knew the arrest of Rachner violated his clearly established rights and by

16  approving this arrest, and not stopping it, Dietrich joined in the concert of action and conspiracy

17  to violate rights and suppress Rachner's speech.

18       152.    Dietrich at 8:26 pm, detained a smaller group of Urban Golfers standing nearby

19  that included Adam Currie.  This was unlawful lacking reasonable suspicion as among other

20  things, Dietrich had been told and believed the "suspect" (Hulton) was in hand; thus there was no

21  suspect to be looking for any longer.  He acted out of malice to suppress the expressive conduct

22  of Urban Golf and back up the prior order to stay out of Capitol Hill.

23

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,        **CLEVELAND STOCKMEYER PLLC**
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 26            8056 Sunnyside Ave. N.
                                                                           Seattle WA  98103
                                                                            (206) 419-4385

153.   Dietrich unlawfully demanded identification from Currie, knowing this was in violation of his clearly established rights.  Currie refused, asserting he did not have to give identification.  Dietrich unlawfully arrested Currie for obstructing an officer, at about 8:29 pm; lacking probable cause and intentionally and maliciously punishing Currie for speaking up, and thus he joined with other officer's in abusing these citizens in a concert of action and conspiracy to violate rights of plaintiffs, and the group.

154.   At about 8:36:12 Letizia told an officer he had arrested Rachner for not giving identification and for Rachner's expressions to Letizia.  The other officer said, "Well, you get what you ask for."  Letizia thereby widened the circle of officers who knew the arrest violated the clearly established right to silence, and was for Rachner's speaking out.

155.   At about 8:37 pm, Schoenberg spoke to Dietrich about Hulton.  Dietrich said, "He doesn't seem to understand?  Hook him up and take him to the station.  Maybe that way he'll understand."

156.   This was coercion of Hulton to "make him understand" that is, confess.  This is a violation of what Dietrich knew was his clearly established right to silence, and to protest officer misconduct.  Dietrich assisted in the arrest of Hulton joining in the illegal agreement to violate rights, motivated because the arrestees had the temerity to oppose officer misconduct.

157.   Dietrich on information and belief approved the arrest of Hulton.

158.   Dietrich failed to obtain a positive identification by Gabriel Clark of Hulton and lacked any probable cause to arrest Hulton.

159.   Rachner, Hulton and Currie were put in handcuffs, taken to the precinct, and put in cells; the City later maliciously prosecuted each of them based on information and false information provided by defendant officers including a fabricated incident report.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 27

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

1   160.   The officers knew their illegal conduct and comments showing illegal motivations

2   were on several videos; on information and belief, the officers sued herein conspired and acted in

3   concert to conceal such video evidence, and to fabricate false version of events for the incident

4   report, agreeing to not disclose the truth, so as to not undercut each other or the incident report;

5   and by misinforming prosecutors they jointly procured the prosecution of plaintiffs, maliciously.

6   161.   Urban Golf has ceased to function due to fear of additional illegal repression or

7   false arrests by SPD.

8   162.   At 8:54:00 pm, Letizia told another officer in the station house Rachner had been

9   a "brainiac." The officer responded, "Fine" and "We can play that game." Letizia continued to

10   widen the circle of approving officers, building and relying on the policy and custom of officers

11   to abuse citizen rights, to punish citizens who speak up lawfully to protest officer misconduct.

12   **Conspiracy to Fabricate and Conceal Evidence**

13   163.   Letizia knew these many facts and his own comments revealing his illegal

14   motivations, were on video. He resolved to cover up the false arrest and misconduct through

15   concealing video, and with other officers sued herein agreed illegally to jointly fabricate and

16   conceal evidence of their illegal conduct, conceal videos, or not disclose them, and to support or

17   write a false incident report, and wrongfully procure malicious prosecution of plaintiffs.

18   164.   The officers knew they all had to join together in this conspiracy or else it would

19   come undone. None could tell the truth, if some were fabricating a version of events to tell.

20   They acted jointly and in concert, and in a conspiracy to fabricate evidence; and they thought

21   they could get away with it because the policies and customs described above would ensure

22   video would not come to light exposing the truth. They also knew OPA would exonerate even if

23   video showed misconduct.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 28

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

165.   Letizia wrote incident report no. 08-392375 concerning these three arrests and intentionally made false statements therein to conceal or tamper with material evidence, as per the agreement with other officers sued herein.

166.   Attached hereto as Exhibit B is a true and correct copy of the narrative section of the incident report signed and prepared by Letizia, which is contradicted by the videos of the arrest Rachner later obtained.

167.   Letizia falsely did not note in his report that there was video of the arrests.  This violated the above mentioned regulations.  He knew that he and others made video including Clark, Dietrich, Silva, Schoenberg, and Archer and he knew it exposed his and other officers' unlawful arrests, dialogue between Letizia and Rachner, the timing and contents of the officers' getting a description from Gabriel Clark, comments about staying out of Capitol Hill, and the "edjumicated" and "brainiac" comments, and other comments and acts tending to show officer misconduct, conspiracy to violate civil rights and the gross violations of civil rights described above.

168.   Letizia knew SPD did not punish or did not seriously punish a complete omission to record video, or a failure to note its existence, as per the above mentioned policies.

169.   Letizia wrote on the incident report that, "After officers had collected I.D. cards from the group, [Gabriel] Clark responded to our location" and "Clark positively identified Hulton within the group as the golfer who had actually swung the golf club and struck him in the face with the ball. Hulton was arrested for assault."

170.   This was sequence and version of events was false.

171.   Gabriel Clark did not positively identify Hulton at any time.  Instead, he gave a description of a suspect but that description did not match Hulton's appearance or dress.  The

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 29

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

1   video and audio shows this, including the audio associated with the screen shot at 8:08:50 pm on

2   the Letizia video, in Exhibit A.

3       172.    All officers sued herein on information and belief knew of this fabrication on the

4   incident report and acted in concert to keep this fabrication concealed.

5       173.    Letizia omitted from the report the description Gabriel Clark gave, to conceal the

6   fact his claim Gabriel Clark identified Hulton was false.   Letizia omitted the conversation in

7   which Gabriel Clark gave the description from the report because it shows there was no probable

8   cause to arrest Hulton (or Rachner).  Each other officer knew this, and knew video would show

9   this fabrication and their wrongdoing .

10      174.    Letizia wrote about the the stop of the smaller group containing Currie, as

11  follows: "While officers were collecting I.D. cards from the initial group, a smaller group of

12  people similarly dressed or carrying golf clubs walked to our location.  Since officers had not yet

13  identified if they had a suspect, officer(s) (including Sgt. Dietrich) called out to this group and

14  asked them to walk over."

15      175.    This statement was false  and video shows this was false, because in fact when

16  officers including Dietrich stopped the smaller group (which included Currie), they had not "not

17  yet identified if they had a suspect" because in fact by then they already had identified and

18  detained a suspect, that is, Hulton.

19      176.    Schoenberg had told Letizia that  the suspect (Hulton) was already detained;

20  Letizia told this to Dietrich four minutes before Dietrich and the officers stopped the smaller

21  group containing Currie; this is shown on the videos later obtained; the officers knew this and

22  this is why they worked together to fabricate evidence and conceal video.

23

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 30

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

177.    Letizia's falsehoods about officers not having a suspect when they stopped the smaller group were an attempt to fabricate a basis for that stop and for the subsequent arrest of Currie, when there was none as each officer knew.

178.    Letizia wrote in the report that he believed that Rachner "was asking for permission to get his wallet (a common occurrence with intoxicated persons)."

179.    This was false. The video later obtained correctly shows Rachner *never asked for permission to get his wallet*. Each officer sued herein knew that this fabrication would come to light unless they acted in concert to back up the fabricated stories and acted to conceal video or keep video out of the hands of anyone who would use it against them.

180.    Letizia wrote in the report that "Rachner told me if I wanted his I.D., I would have to get it myself." In fact, Rachner did not make the statement alleged and Rachner did not consent to Letizia's search. Letizia wrote this to fabricate some defense for his wrongful actions.

181.    Letizia and other officers sued herein on information and belief presented the fabricated version of events to city attorneys to get charges filed against plaintiffs and thus wrongfully and maliciously procured their malicious prosecution.

182.    On information and belief, city attorneys never reviewed video of the arrests of plaintiffs before filing charges; the officers knew they would not as per a general custom of SPD to not give video in many cases and as per the policy and custom to hide video by not noting it on the incident report.

183.    On information and belief, until recently SPD just gave city attorneys a case file without video in many cases.

184.    The officers sued violated many regulations about video including not taking it, losing it, concealing it, conspiring to conceal it or lose it, not noting it on the incident report.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 31

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

1  Schoenberg on information and belief did not upload or save his video to the video storage

2  server.  Letizia, Schoenberg and Clark did not record their approach or initial contact.   Letizia

3  did not record his first contacts with Rachner.   Dietrich did not record his approach or contact

4  with Currie that led to Currie's arrest.  No superior at SPD reviewed the videos then took any

5  action against the officers.  They violated regulations and fabricated evidence freely.

6      185.    On information and belief SPD has not disciplined any of these violations.

7      186.    On information and belief, SPD had a custom or policy to allow officers to not

8  record the first approach to the scene or talk with the citizen.

9      **OPA Complaint Causes Malicious Prosecution**

10      187.    On October 28, 2008, Rachner complained his arrest was illegal in a letter to OPA

11  citing *White*.  On information and belief, the officers learned this and conspired to fabricate and

12  conceal evidence; procured the prosecution of plaintiffs in response, to retaliate for this protest to

13  OPA when said officers knew that it was clearly established right under the First Amendment.

14      188.    The City filed obstruction charges against Rachner on December 4, 2009, and the

15  City filed charges against Hulton at about the same time.

16      189.    The City's prosecutions of plaintiffs was malicious; said prosecutions ended

17  favorably for plaintiffs in 2009 when the City dropped charges.

18      190.    As a proximate result of the false arrests and malicious prosecution and other

19  wrongdoing complained of plaintiffs suffered insult, indignity, humiliation, emotional distress,

20  economic loss and other damages, including spending money on defense fees and costs, and

21  Rachner lost substantial business revenue, due to said wrongful conduct.

22      191.    The wrongs against plaintiffs sued on in this complaint, were intentional and they

23  are allowed to recover emotional distress damages.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,           **CLEVELAND STOCKMEYER PLLC**
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 32              8056 Sunnyside Ave. N.
                                                                  Seattle WA  98103
                                                                  (206) 419-4385

1    192.    The wrongs against plaintiffs sued on in this complaint were malicious and they

2  are allowed to recover punitive and compensatory damages as allowed by law.

3  **Plaintiffs Work 2009-2011 to Overcome SPD Concealment of Video, False
   Statements about Video, and Loss or Spoliation of Video Evidence**

4    193.    During plaintiffs' arrests, six officers made video including Letizia, Dietrich,

5  Silva, Clark, Archer and Schoenberg.

6    194.    SPD repeatedly failed to disclose and concealed said video from plaintiffs.

7    195.    After charges were filed against Rachner, he wrote to SPD asking that all video be

8  preserved as it would prove the true facts about what happened.  His lawyer also requested all

9  material related to his arrest.   SPD thereafter did not provide to him the videos of his arrest, nor

10  the activity logs related to such video.

11    196.    Plaintiffs finally obtained some video of the incident leading to their arrest only

12  after they worked years using extraordinarily unforeseeable efforts and skill to finally discover

13  activity logs exist, which forced SPD to disgorge some of said videos.  To date SPD has only

14  disclosed  the Letizia, Dietrich, Silva and Clark videos and SPD is still today concealing the

15  Archer video and on information and belief, a Schoenberg video.

16    197.    Many of the detailed facts, quotes and the times shown above, are taken from the

17  videos plaintiffs later obtained.

18    198.    Plaintiffs initially requested all video or all information about their arrests during

19  their criminal cases, and SPD wrongfully failed and refused to give them videos, or logs, even

20  though SPD had activity logs clearly showing the videos existed.

21

22

23

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 33

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

199.    The Clark, Dietrich and Archer videos were lost or removed from the system in the loss event on about December 31, 2008 but SPD had exported copies, as shown on the logs for said videos; and SPD concealed said copies from plaintiffs during their cases.

200.    SPD also concealed the activity logs that showed both the loss events and the copying events, during plaintiffs' criminal cases.

201.    SPD also wrongfully concealed from plaintiffs the facts that the SPD server lost some of the video, and that the system could lose video.

202.    SPD violated *Brady* obligations to plaintiffs by not disclosing to them the videos, or that SPD had video or the loss events.

203.    In April 2009, Letizia told Heidi Sargent, one of the assistant city attorneys prosecuting Rachner, that officers had not yet identified a suspect when Rachner was unlawfully detained, and that Rachner had acted "belligerent."  Letizia told Eric Nalder, a reporter, that Rachner was arrested for more than merely refusing to show identification.  These were false statements.  Letizia by this continued to propound the falsehoods on the incident report and a version of events that was false, and which would have been shown false if plaintiffs had been given the video of their arrests.

204.    This was to continue to procure wrongful prosecutions of plaintiffs and on information and belief Letizia continued to conspire with the other officers sued herein to mislead others and procure a malicious prosecution, fabricating events and probable cause, and concealing video.

205.    On April 17, 2009, OPA exonerated Letizia in an official ruling by policy maker Captain Thomas "Tag" Gleason, who said the conduct of Letizia "was appropriate and consistent with policies and practices of the" SPD.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 34

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

206.    The OPA exoneration further set the policy that arrest for not giving ID is allowed, and reinforcing the general policy to abuse citizens, even where OPA has video disproving the officer version of events.

207.    In May 2009, OPA associate director and policy maker John Fowler wrote, in the May 2009 OPA Commendations and Complaints Report, that Rachner's arrest was lawful and proper and approved by the supervisor, again ratifying and setting policy officers may arrest for not giving identification and may abuse citizens.

208.    Rachner wrote to OPA on July 15, 2009 asking "what policy, practice or custom of SPD permits officers to arrest a detainee who fails to accurately identify themselves?"

209.    About July 2009 Captain Gleason responded that the SPD, OPA and the City Attorney office reviewed Rachner's complaint and the response of the officers was proper, for a third time ratifying and declaring in effect, the policy that officers may abuse citizens, arrest for not giving identification, and arrest for contempt of cop, even when the citizen complains and cites the relevant case law to OPA,  tells OPA to look on the video, and the video supports the citizens' version of events, and disproves officer versions of events and shows the incident report is false.

210.    The OPA whitewashed the officers' wrongdoing directed at plaintiffs and also apparent fabrications and concealment of evidence committed by these officers.

211.    No one at OPA has been disciplined for this wrongful conduct.  OPA misconduct is hidden by the general policy of concealing exoneration files.

212.    The OPA also exonerated Dietrich for falsely arresting Currie and other misconduct even though as in Rachner's case, it had the videos showing false arrest and misconduct.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 35

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

213.   OPA exonerated Dietrich for another complaint made that he scared Currie with a threat of exposing him to a cell containing the spit of a prior detainee who had hepatitis, even after Dietrich admitted to OPA that he made the comment to "scare" Currie.   OPA's exoneration in this case further set the policy that officers may in general abuse citizens and OPA will whitewash it, relying on concealment of exoneration files and video.

214.   Meanwhile, on May 7, 2009, Rachner again requested video of his arrest made by officer Letizia.

215.   SPD responded by sending Rachner a letter on June 9, 2009 (mistakenly dated April 9, 2009) signed by acting chief John Diaz, a policy maker at SPD, who by policy or custom frequently allowed his name to be used to conceal video.  The letter stated, falsely and incorrectly, that, "These recordings are both past our retention period [referring to the normal 90 day retention period] and can no longer be obtained. "

216.   This was false because in fact SPD had the Letizia video on its server. SPD also had copies given to Letizia and OPA.

217.   The falsehood of the Diaz statement  was easily discernible at SPD;  the activity log for this video at SPD clearly showed the server had the video, and the copies were made for OPA and Letizia.

218.   Attached hereto as Exhibit C are true and correct copies of the June 9, 2009 (mistakenly dated April 9, 2009) letter from SPD mentioned above and also two other letters from SPD to Rachner, one dated June 30, 2009 and one dated January 25, 2010 which also have false statements that video related to Rachner's arrest does not exist at SPD.

219.   On information and belief, defendant officers conspired to suppress the videos and have the statements in Exhibit C issued to Rachner concealing videos.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 36

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

220.   On information and belief, public records officers did not look on the logs to see if there was Letizia video or in responding to Rachner's request, per the general policy that they relied on video officers to find video; nor did they ask the officer involved or OPA for any copies of video; and/or in this case on information and belief Letizia concealed his video from them.

221.   Rachner in mid-2009 concluded there was no longer any video, and was concerned that SPD had not kept it and would be engaged in further wrongdoing in destroying or losing evidence, despite his specific request that the video evidence be preserved.

222.   In late 2009 Rachner decided to find out who deleted video of his arrest and when. This led to his discovery of activity logs, the existence of which SPD had concealed from the public and defendants for years.

223.   He researched the SPD system vendor and learned there are activity logs for each video containing things such as dates of creation, and dates of removal from the system.

224.   In November 2009 he demanded activity logs for all video relevant to his incident.

225.   On information and belief, this was the first time any citizen asked for logs.

226.   On information and belief, this caused the SPD public records staff to look at the logs for the first time, to respond to Rachner's requests.

227.   On January 25, 2010 SPD produced to Rachner the log for the Letizia video, and the Letizia video. SPD also told Rachner in writing that this was the only video related to his arrest, and that neither Clark nor Schoenberg made video. Such statements were not true, because there was video by Dietrich, Clark, Silva, and Archer if not Schoenberg. SPD also put on the Letizia video container, a notice saying "This copy was prepared by the Seattle Police Department and may not be revealed to any other individual and/or agency or used for any other

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 37

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

1  purpose that stated without the consent of the Seattle Police Department, " and on information

2  and belief SPD commonly puts such notices on videos it releases, violating person's liberty and

3  free speech rights as part of the general policy and custom to ensure videos are not used to

4  remedy officer misconduct.

5      228.    A copy of the activity log for the Letizia video that Rachner received in January

6  2010 is included in Exhibit D hereto, discussed below.

7      229.    On information and belief, even in January 2010 defendant officers or some of

8  them conspired to keep videos concealed from Rachner by misinforming public records officers

9  and/or by 2010 public records officers still had no proper way to search for video; the existence

10  of the Dietrich, Clark, Silva, and Archer videos is apparent on the server activity logs and either

11  public records officers were fooled into saying there was no video other than that by Letizia, or

12  had no system to look at activity logs and took the officers' words at face value.

13      230.    Rachner reviewed the Letizia video and learned there was a Dietrich video; he

14  requested such video, and then on March 9, 2010, SPD gave him the Dietrich video and log.  A

15  copy of the log for the Dietrich video is included in Exhibit D discussed below.

16      231.    SPD still concealed the other video from Rachner. Still unaware other video

17  existed, being misled by SPD's statements, Rachner filed a public records suit in April 2010

18  concerning the delays in producing the video that had been disclosed.  This led to disclosure of

19  more videos.

20      232.    Hulton had requested all video related to his arrest in 2010 and in mid 2010 SPD

21  sent him the Letizia, Dietrich, Silva and Clark videos, which Hulton shared with Rachner.

22      233.    SPD never sent Rachner the Silva or Clark videos despite his longstanding request

23  for all related videos.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,          **CLEVELAND STOCKMEYER PLLC**
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 38        8056 Sunnyside Ave. N.
                                                         Seattle WA  98103
                                                         (206) 419-4385

1    234.    Only after his public records suit was filed did SPD send Rachner logs for the

2 Silva video and a Clark video, but still concealed from him the Archer video.

3    235.    Exhibit D hereto contains true and correct copies of the logs for the Silva and

4 Clark videos as well as the Letizia and Dietrich video logs that were sent to Rachner in 2010.  On

5 said logs, Rachner made handwritten notes as he learned what the information on the logs means.

6    236.    These logs were extant and easily viewable on the SPD system since creation of

7 the videos in October 2008 and had they been checked would have disproved the repeated

8 assertions there was no video.

9    237.    The logs in Exhibit D are typical of activity logs indicating badge numbers,

10 creation dates, loss events, playback events, copying events, and other data including things such

11 as "IIS" which means a copy was made for OPA.

12    238.    The logs in Exhibit D correctly indicate the history or events concerning the video

13 relevant to plaintiffs' arrests.

14    239.    The logs in Exhibit D correctly indicate  that SPD had video relevant to plaintiff's

15 arrest when Diaz and others at SPD repeatedly told Rachner there was no longer any video or

16 that the only video was the Letizia video.  Either defendants and SPD fraudulently made those

17 statements or SPD systemically allowed itself to make such incorrect statements by not giving

18 public records officers access to the logs.

19    240.    The logs in Exhibit D correctly show that various videos related to arrest of

20 plaintiffs had been  copied and replayed at SPD.  The statements there was no video were

21 fraudulent or SPD systemically had no process for checking with officers involved or OPA, in

22 responding to requests for video.

23

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 39

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

241.   The handwritten notes by Rachner in Exhibit D are true and correct descriptions of the events they describe.

242.   The logs in Exhibit D were all  easily discernible at SPD at all relevant times.

243.   Rachner's experiences with getting video are not unique and there is a policy and custom at SPD to defeat requests for video in the same manner that Rachner's requests for video were defeated: those responding to requests did not have access to the logs.  In general, SPD set up the system to conceal video, conceal logs, not look at logs, and does not even link video or otherwise properly respond to requests.

244.   Rachner communicated with SPD about the logs he had received.

245.   In June 2010, SPD legal advisor Shawna Skjonsberg-Fotopolous told Rachner, regarding a log sent to him, that it showed the corresponding video had been deleted from the system in December 2008 ("Video Log shows that video file was deleted from the server on 12- on 12-31-08 referring to a change from zero to two on the file for integrity status in the logs, and she thus confirmed this change from zero to two  means there was a loss or deletion event.

246.   At this time, SPD concealed and did not tell Rachner the loss event that took out those videos from the server was a massive loss of some 14,221 videos, something Rachner learned only in 2011 as discussed below.

247.   In media write ups relating to Rachner's public records suit, SPD's Sean Whitcomb had falsely told Nalder in April 2010 that the Letizia tape had been temporarily lost from the system.

248.   This was an attempt by an SPD policy maker to conceal the large loss of video event; to falsify evidence because in fact the Letizia video never was lost from the server; this

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 40

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

1  was continued falsification of evidence or reflected defendants' ongoing misinformation and/or

2  SPD practice of hiding former events of concealment of video.

3        249.    Whitcomb also told Nalder that the lost data was eventually recovered.

4        250.    This was false because the Letizia video had not been lost nor recovered.

5        251.    The log for the Letizia video in Exhibit D correctly shows that  the Letizia video

6  was not lost in the loss event in December 2008, nor recovered, contrary to Whitcomb's official

7  statements to Nalder.   Either defendants deceived Whitcomb or there was no proper system at

8  SPD for retrieval of video or responding to requests about video.

9        252.    Whitcomb's statement was also false because the 14,221 videos lost from the

10  server in December 2008 were not recovered; SPD desired to conceal the massive loss events

11  and the fact they are recurrent and often times video is not recovered after such spoliation.

12        253.    In November 2010, Rachner discussed with SPD Assistant Chief Dick Reed video

13  concealment issues, and the loss event SPD had told him affected some of the video of his arrest.

14        254.    Reed concealed from Rachner that the loss event involved 14,221 videos, and

15  concealed that there was still an Archer video SPD had not given to Rachner, or Hulton, and that

16  there were other loss events.

17        255.    Rachner told Reed it was unlikely the only person to whom SPD had wrongfully

18  denied video was himself, Rachner, that is, one with computer security skills able to go and learn

19  about activity logs and request same; and that if he had been wrongfully denied video, likely

20  others had been too.  Rachner said  if the reason for being denied video was some negligent loss

21  event as claimed, then likely this happened to other people, too.  Rachner told Reed that others

22  could be wrongfully convicted or sitting in jail today, where they had asked for video and not

23

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

1  gotten it the way Rachner had not gotten video. Rachner said  SPD should come forward and

2  audit itself for prior wrongful denials of video to find out such cases and do the right thing.

3      256.    Rachner offered to help SPD do the audit, and gave Reed an 8 point method

4  involving looking in paper files for requests for video that had been denied, then looking on

5  activity logs to see if in fact there was video at the time (that is, following the method Rachner

6  used to uncover concealment of video of his own arrest) by using the logs.

7      257.    Rachner suggested it was easy to write a software application to check the data

8  base of activity logs to assist in this audit.

9      258.    Reed and SPD politely yet firmly declined those suggestions.

10     259.    SPD  on information and belief has not conducted any audit or publicized audit to

11  find other cases of persons wrongfully denied video, or prior acts of concealment or spoliation of

12  video evidence, even after Rachner's efforts told top leadership there had been massive loss

13  events and ongoing concealment of logs.

14     260.    This is because the general policy since 2001 and to date is to not let the video

15  system or server be used to show misconduct, whether misconduct on the street, or misconduct

16  by high SPD officials in operating the video system to hide concealment loss or video spoliation

17  events.

18     261.    In the meeting, Rachner told SPD he would conduct such audit himself, and he

19  has taken steps to be able to do so in part despite SPD resistance and concealment that has

20  continued into 2011.

21     262.    Rachner in 2010, began requesting denials of request for video and related logs

22  from SPD.  SPD failed to give Rachner the records sought in timely manner, and indicated it

23  would take years for Rachner to get the information needed in this way.  This slow and partial

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 42

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

response was in furtherance of SPD policy to cover up the loss events and other concealment or spoliation of video evidence.

263.    In February 2011, Rachner decided to deprive SPD of the ability to falsely claim it took a great deal of time to respond to partial requests, so in February 2011 he requested in essence, all activity logs for all videos on the SPD server.

264.    In response, SPD delayed for months, falsely asserting that for technical reasons it could only respond in batches and it was not easy to respond.

265.    Rachner forced SPD to respond more fully when he wrote SPD truthfully telling them the electronic nature of the data meant SPD could easily respond to his request, and indicated he would sue to get the log data.

266.    SPD delivered some 714,659 logs about July 2011 (the data was still incomplete; it lacked time of day information useful to search for video).

267.    The data only included three years of log entries, because SPD purges videos and log entries after three years.

268.    The logs showed the specific sudden loss events mentioned above, by showing the change from zero to two in the integrity field, including for the loss of 14,221 logs in December 2008 and other loss events identified above.  This was the first time Rachner realized the loss event SPD had claimed affected his video, actually involved 14,221 videos; SPD had never told him during his criminal trial it had lost some of the video related to his arrest.

269.    On information and belief the disclosure of many logs to Rachner in July 2011 was the first time SPD has been forced to reveal the magnitude of the video loss events mentioned in this complaint.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 43

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

1      270.    In the logs Rachner obtained in July 2011, there are some 65,690 videos extant

2  on December 29, 2008.

3      271.    The loss of 14,221 videos at the end of December 2008 was thus a loss of some

4  22% of the video on the system at that time.

5      272.    Attached hereto as Exhibit E is a true and correct print out of one page out of 59

6  pages in a print-out listing the identifying numbers of the 14,221 videos lost in December 2008

7  that are included in the data given to Rachner in 2011.  The page included in Exhibit E is page 51

8  of the entire print out and this page has the identifying numbers of the Clark, Archer and Dietrich

9  videos: 7405@20081018200500, 6938@20081018201905, and 4901@20081018203109.  In

10 these identifying numbers the officer's badge number is the first four digits, followed by "@";

11 followed by digits for the year, month, date and time the video was made.  Exhibit E correctly

12 indicates those videos were lost in that event.  (Rachner only obtained the Clark and Dietrich

13 videos because copies had been exported and Rachner still has not been given the Archer video

14 by SPD.)

15     273.    SPD continues to purge or delete log entries today.  SPD deletes log entries after

16 three years.

17     274.    Every day SPD is deleting entries that would help shows acts of prior

18 concealment of video, by showing that a video existed at the time a request for video was made,

19 or during the time a criminal charge was pending and SPD failed to deliver video.  Every day

20 SPD deleting entries that would show it violated disclosure obligations, improperly responded to

21 records requests or violated Brady obligations.

22     275.    On information and belief, on or about January 1, 2012, the records of the loss

23 event of December 2008 concerning some 14,221 videos will be purged from the SPD system;

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,          **CLEVELAND STOCKMEYER PLLC**
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 44        8056 Sunnyside Ave. N.
                                                        Seattle WA  98103
                                                        (206) 419-4385

1   and on other three year anniversaries of the loss events mentioned above, SPD will purge or

2   delete evidence of such loss events.

3       276.    The logs given to Rachner in July 2011 indicated to him for the first time there is

4   an "Archer video" concerning his arrest.

5       277.    SPD previously concealed from Rachner and Hulton the Archer video, repeatedly,

6   and still is concealing said video from Rachner and Hulton.

7       278.    The data Rachner obtained in July 2011 correctly shows SPD deletes log entries

8   after three years.

9       279.    There were 143 days between Rachner's request on February 21, 2011, and July

10  14, 2011, when SPD copied the database for Rachner.

11      280.    In said 143 day period SPD continued to delete videos, activity logs and log

12  entries, thus actively deleting records Rachner had requested, while knowing of his efforts and

13  plan to audit SPD for prior acts of concealment of video.

14      281.    In this 143 day period, on information and belief, SPD deleted about 70,000

15  activity logs before giving the data set to Rachner, including some 350,000 log entries, to

16  conceal and hide SPD's prior concealments and nondisclosure of video and loss or other

17  spoliation events.

18      282.    This ongoing concealment and spoliation of video evidence is part of the ongoing

19  policy and custom by SPD since 2001 to ensure video evidence is not used to show officer

20  wrongdoing; to operate the video system to conceal wrongdoing; and to operate the system

21  including through decisions at the highest level, to ensure that prior acts of concealment and

22  nondisclosure of video evidence are not disclosed, and to destroy evidence of loss or spoliation

23  of video evidence.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,          **CLEVELAND STOCKMEYER PLLC**
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 45           8056 Sunnyside Ave. N.
                                                              Seattle WA  98103
                                                              (206) 419-4385

1    283.    SPD on information and belief knows that certain civil claims expire after certain

2  periods of time, including sometimes a three year statute of limitations.  SPD  delayed

3  responding to Rachner's requests to let more information be deleted, trying to let statute of

4  limitations barriers arise to prevent civil claims that might reveal officer misconduct.

5    284.    Instead of self auditing, SPD has by high level policy, continued to conceal video

6  and events of concealment, loss or spoliation of video evidence, and has continued to fail to

7  disclose same and to destroy evidence, as part of the overall policy and custom since 2001 to use

8  and operate the system to hide rather than reveal misconduct.

9    285.    If Rachner had not obtained the logs he obtained in July 2011, SPD would have

10  deleted more evidence.

11    286.    After obtaining the logs, Rachner studied them.  The logs given to Rachner show

12  a policy at SPD to prevent video from reaching prosecutors.

13    287.    The logs given to Rachner correctly show and it is true that on average, over the

14  period covered in the data set, SPD exports 7 videos a day to city and county prosecutors.

15    288.    SPD refers some 60 cases a day to city or county prosecutors.  SPD has a policy

16  and practice of concealing and withholding video from prosecutors, who commonly do not

17  review video.  By this policy and custom, SPD seeks to ensure SPD video is not used against

18  officers; is not used to exonerate innocent defendants such as Rachner, Hulton and Currie, who

19  challenge officer misconduct; and is not presented to attorneys who might use the video to

20  believe such persons or to find there was officer misconduct.

21    289.    SPD leaders have known of this very low rate at which attorneys are given video

22  and has promoted a system in which non-uniformed persons such as attorneys, do not normally

23  view video.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 46

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

290.    The logs given to Rachner in July 2011 show SPD had a policy to let many officers not take video. The logs given to Rachner correctly show that as of August 2008 there were some 422 officers who made video (that is, video from that many officers, remained in the SPD system then was later given to Rachner).  On information and belief, 422 officers was as of August 2008 only some 70% or 80% of all street officers in patrol cars. SPD by policy and custom allowed 20% or 30% of all officers  in patrol cars to routinely not take video implementing the policy that it was proper for officers to not make video, to defeat the purpose of the system to show officer misconduct through video.

291.    The logs given to Rachner show SPD fails to use video data to properly supervise. The logs given to Rachner correctly show that in the three-year period included, there were exports of some 999 videos to OPA. There are 841 officers who created video shown in the logs given to Rachner.  (Gradually this number increased from 2008 going forward). An export to OPA occurs if a citizen complains to OPA and the OPA's initial screening does not indicate the complaint is meritless. The 999 videos exported to OPA each show the officer (badge number) who created the video, that is, who was involved in the situation leading to the complaint to OPA.

292.    The 999 videos shown in the logs have a lopsided distribution pattern:  relatively few officers are involved in most of the exports to OPA.

293.    Half of all officers making video as shown in the logs, had no OPA exports; some 294 officers out of the 841 officers had  1-3 exports to OPA each, or a total of 472 exports; 88 officers had 4 to 18 video exports to OPA each; and one officer had 19 exports to OPA such that these  89 officers with the most OPA video exports had a total of 527 exports to OPA.

294.    These 89 officers accounted for  52.7% of all 999 videos exported to OPA.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 47

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

1    295.    89 officers is 10.5% of 841 officers.

2    296.    Roughly 11 percent of officers are shown in the logs, to be associated with half of

3    all OPA complaints .

4    297.    SPD leaders failed to properly use the video data to supervise, train or discipline

5    officers who generate most complaints; SPD has not used the data to find or review videos, to

6    ensure videos of such officers are disclosed and reviewed, nor has SPD focused supervision or

7    training on this 10 percent of officers causing half the complaints to OPA.

8    298.    SPD on information and belief, has failed to cross check or audit for video not

9    disclosed, or  incident reports not noting video, associated with the 89 officers generating the

10   most OPA complaints.

11   299.    SPD generally has not used the video system and log data at its disposal to

12   properly supervise officers; the purpose of the system in practice is to conceal and not reveal or

13   remedy misconduct.

14   300.    On August 18, 2011 the Washington State Supreme Court ruled that police

15   discipline files leading to exoneration of an officer may not be concealed from persons

16   requesting same on a blanket basis but on information and belief, since this ruling, SPD has

17   generally continued to deny to Rachner, the media and others the OPA exoneration files

18   requested previously.

19   301.    Rachner also worked to monitor SPD officer compliance with video regulations

20   after his criminal case was terminated; in 2009, Rachner had obtained all of the SPD's 229

21   incident reports for all obstruction arrests in the period October 2007 to January 2008 and

22   analyzed them; and this is the source of information for the allegations above that video is not

23   noted in some 83% of obstruction arrests in this period.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,                    **CLEVELAND STOCKMEYER PLLC**
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 48                       8056 Sunnyside Ave. N.
                                                                            Seattle WA  98103
                                                                             (206) 419-4385

302.    SPD officers have continued to resist proper use of the video system since 2001 and to the present.  SPD leaders know this and have operated the system so that it does not show officer misconduct.

303.    Recently, in September 2011, SPD officers complained about changes in a prior policy, under which captains were not allowed to review videos concerning the subordinate officers in their charge.  This prior policy prevented video from being used to monitor and supervise officers.  SPD leaders know of this ongoing resistance to review of videos, and at all times knew officers were resistant to using video to show their misconduct, and SPD leaders ignored this and nonetheless implemented the video system so that it would hide and conceal misconduct rather than reveal it.

304.    In September 2011 Sean Whitcomb told KOMO TV that SPD often does not disclose videos about third party citizens because the rules concerning same are "complex" and involve "labor law."  In fact, the vast majority of video involving a third party involves incidents in public and in on-street encounters, do not involve salacious facts or some kind of confidential informant or other information the disclosure of which would not raise privacy issues nor harm or threaten investigations or law enforcement; and labor law does not mandate anything that SPD did not agree to by its choice.

**LEGAL CLAIMS**

**False Arrest**

305.    Plaintiffs restate and incorporate in this section all other allegations in this complaint.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 49

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

306.  Letizia, Dietrich and Schoenberg lacked proper basis or probable cause for stopping, seizing, searching and arresting Rachner and Hulton and are individually liable for false arrest to plaintiffs.

307.  There was no probable cause or basis to stop and seize or arrest the group through show of force, nor was there probable cause to believe a crime had been committed by Rachner and no basis to search him lawfully, as the refusal to give identification was lawful; nor was there probable cause to arrest Hulton for assault.

308.  There was no reasonably objective basis for the defendant officers' actions.

309.  Said officers intentionally and maliciously falsely arrested plaintiffs to suppress their speech and expressive conduct and violate what officers knew to be their clearly established rights of assembly, liberty, speech, expression, the right to be free of unlawful search and seizure and the right to silence and to not give identification.

310.  The false arrests caused and proximately caused plaintiffs to suffer insult, indignity, humiliation, embarrassment and emotional distress; economic loss; minor physical pain and suffering; and they are entitled to recover from individual defendants for all such losses and injuries in an amount to be shown at trial.

311.  The individual defendants agreed to carry out said illegal acts and each participated in such agreement, helped carry it out through the aforesaid acts and comments and failures to stop the unlawful acts, and through fabricating evidence as aforesaid, and each thus conspired to violate rights and fabricate evidence and each is jointly and severally liable to each plaintiff for any liability of the others, under acting in concert and conspiracy theories of liability.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 50

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

312.   By acting maliciously and intentionally, said individual defendants are liable for emotional distress damages.

313.   The City of Seattle is vicariously liable for said unlawful seizure and search and false arrest liability and conspiracy liability because at all relevant times the City employed Letizia, Dietrich and Schoenberg who were acting in furtherance of City business and within the scope of employment when the said tortious acts occurred.

**Malicious Prosecution**

314.   Plaintiffs restate and incorporate in this section all other allegations in this complaint.

315.   Letizia, Dietrich and Schoenberg are liable to plaintiffs for malicious prosecution of plaintiffs; they caused criminal proceedings to be initiated or continued against plaintiffs without probable cause; with malice; and said proceedings terminated in favor of plaintiffs or were abandoned when the City dismissed charges in 2009; and said prosecutions caused plaintiffs to suffer injury or damages.

316.   Plaintiffs are entitled to recover from Letizia, Dietrich and Schoenberg all such damages, including general damages, economic loss and mental and emotional distress.

317.   The individual defendants acted in concert and conspired to effect and procure said malicious prosecutions including through fabricated evidence and concealment of facts with each agreeing thereto and taking acts in furtherance thereof as aforesaid, including but not limited to coordinating fabrication of evidence and agreeing to not reveal that the incident report contained falsehoods; and each is jointly and severally liable based on acting in concert and conspiracy theories of liability.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 51

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

1     318.    The City of Seattle is vicariously liable to plaintiffs for malicious prosecution,

2  because at all relevant times the City employed individual defendants and prosecutors who were

3  acting in furtherance of City business and within the scope of employment when the said tortious

4  acts occurred.

5     319.    The City is also liable for malicious prosecution as it maliciously prosecuted

6  plaintiffs and is not immune.

7     320.    City prosecutors are not being sued for this tort due to their legal immunity;

8  should facts develop showing they acted outside the prosecutor role plaintiffs reserve the right to

9  add them as defendants.

10    **Intentional Infliction of Emotional Distress**

11     321.    Plaintiffs restate and incorporate in this section all other allegations in this

12  complaint.

13     322.    Plaintiffs may recover against Letizia, Dietrich and Schoenberg for the tort of

14  intentional infliction of emotional distress.

15     323.    Said defendants engaged in extreme and outrageous conduct in falsely arresting

16  Rachner for speaking up about his rights lawfully and prosecuting him for filing an OPA

17  complaint; and for joining in his arrest and not stopping it when the stated basis was he was

18  acting "edjumicated" and like a "Brainiac" when this merely meant he correctly told Letizia the

19  law; they acted with extreme and outrageous conduct including false arresting Hulton without

20  having any identification of him and when the identification given did not match him; and by

21  fabricating and concealing evidence as aforesaid and jointly agreeing to back each other up in

22  any OPA or other investigation including not disclosing that the statements on the incident report

23  were false or that there was video.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 52

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

324.    Plaintiffs suffered severe emotional distress as a direct result of this wrongdoing.

325.    The individual defendants are liable for such damages.

326.    Each jointly agreed to commit the tort of outrageous infliction of emotional distress and violate plaintiffs rights, and fabricate evidence, and conceal video, to allow the others to do so without telling, and each acted in furtherance of said agreement and each is jointly and severally liable to each plaintiff based on conspiracy and acting in concert theories.

327.    Their actions were outrageous projections of raw police power to abuse citizens with impunity, knowing the video and OPA systems would let them do so, simply because Rachner was educated and spoke up or Hulton was part of Urban Golf that officers disliked in part for its expressive conduct.

328.    The actions of defendants were extreme as they involved fabrication and concealment of evidence, which is a crime.

329.    Their acts to back up the order that Urban Golfers could not come back to Capitol Hill also were extreme and outrageous.

330.    Because this was intentional, plaintiffs may recover for emotional distress.

331.    As result of this extreme and outrageous conduct, plaintiffs suffered insult, indignity, and economic and emotional distress damages and may recover same from the individual defendants.

332.    The City of Seattle is vicariously liable to plaintiffs for said misconduct for intentional infliction of emotional distress, because at all relevant times the City employed individual defendants who are liable and they were acting in furtherance of City business and within the scope of employment when the said tortious acts occurred.

**Federal Civil Rights Claims – Compensatory and Punitive Damages**

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

1    333.    Plaintiffs restate and incorporate in this section all other allegations in this

2  complaint.

3    334.    42 USC §1983 provides that one may recover from any person or entity acting

4  under color of state law who causes damages through violations of rights under the federal

5  constitution and federal laws.

6    335.    At relevant times, individual defendants acted under color of law and in uniform.

7    336.    Letizia, Dietrich and Schoenberg violated the following federal rights of

8  plaintiffs:  (a) the right Rachner had to free speech and protest in speaking up to Letizia, in filing

9  the OPA complaint, and in his expressive conduct, under the First Amendment; (b) the right

10  Hulton had to free speech in his expressive conduct and his protesting his arrest; (c)  the right to

11  assemble as Urban Golfers under the First Amendment and the substantive right to due process

12  liberty in the Fourteenth Amendment; including the right to walk about Capitol Hill and be free

13  of malicious prosecution; (d) the Fourth Amendment rights of Rachner and Hulton to be free of

14  unreasonable or unlawful searches and seizures or stops, including illegal assaults on them when

15  arrested and seized, their battery, false arrest and malicious prosecution; (e) the Fifth

16  Amendment rights of Rachner and Hulton to remain silent, violated when Rachner was arrested

17  for failure to give identification and when Hulton was arrested for not confessing; (f) violation of

18  plaintiffs' Fourteenth Amendment due process rights and Sixth amendment rights to confront

19  witnesses in that defendants and the City allowed loss or destruction or nondisclosure of video

20  and related information and violated plaintiff's *Brady* rights.

21    337.    Said violations were intentional, malicious, motivated by ill will and spite,

22  including spite at Rachner for being "edjumicated" or a "Brainiac"; individual defendants have

23

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 54

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

1  contempt for citizens who speak up to cops or stand on their rights and said contempt is

2  malicious and oppressive.

3      338.    Letizia later told city attorneys Rachner was an "asshole." Letizia had malice

4  toward Rachner and all officers had malice to the group.

5      339.    As a direct result of these violations, plaintiffs suffered damages, injury and loss,

6  including insult, harm to reputation, indignity, defense costs, emotional distress, anxiety, and

7  economic loss; Rachner suffered the loss of over $100,000 when one client of his learned of his

8  arrest and did not hire him as a computer security expert due to the defendants' misconduct.

9      340.    Said individual defendants are liable to plaintiffs in an amount to be proven at

10  trial including for compensatory and punitive damages, and attorneys fees and costs of suit.

11      341.    Each such defendant agreed to the illegal acts and conspired to violate the civil

12  rights of plaintiffs and took action in furtherance of such agreement or acted in concert to do so

13  including backing each other up and coordinating the fabrication of evidence and making false

14  statements on the incident report; each is jointly and severally liable to plaintiffs for conspiracy

15  to violate civil rights.

16      342.    The city of Seattle is liable under 42 USC § 1983 because the violations of civil

17  rights by individual defendants were caused by, facilitated by, promoted or allowed knowingly

18  or recklessly through official policy and custom, as detailed throughout this complaint and

19  existing from 2001 forward to October 2008 and as shown by later acts of ongoing concealment

20  of video evidence related to this incident to the present day; including but not limited to policy

21  and custom to have and allow abuse of citizens, excessive force, arrests for not giving

22  identification, improper training and supervision; policy and custom to not disclose video or

23  OPA findings as aforesaid throughout this complaint, to make false statements about video, to

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,            **CLEVELAND STOCKMEYER PLLC**
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 55             8056 Sunnyside Ave. N.
                                                                    Seattle WA  98103
                                                                     (206) 419-4385

conceal video, to conceal activity logs and to hide and conceal activity logs and events of concealment, loss or spoliation of video evidence even in the face of repeated requests for video.

343.    The City is liable for these civil rights violations because SPD policy or custom caused the wrongdoing in violation of section 1983; SPD policymakers knowingly or recklessly allowed the video and OPA systems to be operated so as to not reveal misconduct, contrary to the direct promises to the public the video would help assure officer integrity.

344.    SPD leaders also knowingly engaged in many of the policies and customs mentioned herein including concealment of large video loss events, concealment of logs, and the decision to not audit SPD.

345.    SPD leaders acted intentionally or recklessly ignored facts with callous disregard to the risk that officers would resist disclosure of wrongdoing, and would operate the video and OPA systems to conceal officer misconduct rather than reveal it.

346.    Such municipal acts and omissions caused the violations asserted herein.

347.    The City is thus liable to plaintiffs under section 1983 for all compensatory damages, attorneys fees and costs that shall be proven at trial.

**Civil Rights Injunctive Relief**

348.    Plaintiffs face an ongoing threat of similar violations in encounters with officers and an express threat that Urban Golf is not allowed.

349.    Since October 2008 Urban Golf has ceased to operate due to SPD intimidation and conduct as alleged above; including false arrests and prosecutions of three members of Urban Golf on trumped up charges.

350.    Because of such ongoing threats and harms, plaintiffs are entitled to the injunctive relief sought.

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 56

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

1  **DEMAND FOR JURY TRIAL; PLAUSIBILITY OF ALLEGATIONS**

2      351.    Plaintiffs demand trial by jury of all facts and issues that may be resolved by jury;

3  If this case is removed to federal court, this demand is intended to be a federal jury trial demand.

4      352.    Plaintiffs provide detailed allegations to meet recent standards for "plausibility"

5  of complaints in section 1983 cases that altered the prior "notice pleading" standard. Plaintiffs

6  reserve the right to amend to add further detail as they gain more logs, videos, information,

7  exoneration files, obstruction reports or other data that may enhance plausibility.

8                              **PRAYER FOR RELIEF**

9      WHEREFORE plaintiffs pray for an order and judgment:

10      1.      Declaring specifically that defendants violated their rights and committed the torts

11  and violations alleged; violated SPD regulations, acted intentionally; fabricated and concealed

12  evidence; finding specifically that individual defendants knew of and failed to stop the violations

13  asserted herein, and acted with malice, and acted in a concert of action and conspiracy;

14      2.      Awarding plaintiffs amounts for compensatory and punitive damages to be

15  determined at trial, and also attorneys fees and costs as allowed by law; and

16      3.      Permanent injunctive relief directing the City to act to remove the criminal

17  charges on file against plaintiffs or place in said files statements that such charges lacked any

18  basis and were maliciously and improperly brought; directing SPD to properly operate the video

19  and OPA systems, including measures to ensure video and logs are recorded, kept, and disclosed

20  properly and not purged, concealed, lost or spoliated; an order directing SPD to make activity log

21  information publicly available on line; an order directing SPD to cease arresting citizens for

22  refusal to give identification and to cease conduct abusing citizen rights, including the illegal

23  order to Urban Golf to cease operating; an order to SPD to properly train officers including

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,            **CLEVELAND STOCKMEYER PLLC**
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 57              8056 Sunnyside Ave. N.
                                                                  Seattle WA  98103
                                                                   (206) 419-4385

1   expanding the manual sections on stops and arrests; an order that video must be reviewed before

2   officer versions of events are evaluated; an order that any exemptions must be used with

3   particularity; an order that SPD must treat failure to take video without due excuse, as a serious

4   offense leading in most cases to dismissal and or as giving rise to a presumption that the video

5   would show the officer version of events is false; and

6       4.      Awarding such other and further relief as may be just and equitable.

7   DATED this 5th day of October, 2011.

8
                                    CLEVELAND STOCKMEYER PLLC
9
                                    By: _____
10                                       Cleveland Stockmeyer, WSBA #21636

11                                  8056 Sunnyside Ave. N.
                                    Seattle, Washington  98103
12                                  (206) 419-4385

13                                  Attorney for Plaintiffs Eric Rachner and David Hulton

14

15

16

17

18

19

20

21

22

23

COMPLAINT FOR FALSE ARREST, MALICIOUS PROS.,                CLEVELAND STOCKMEYER PLLC
CIVIL RIGHTS & SPOLIATION OF VIDEO EVIDENCE - 58                8056 Sunnyside Ave. N.
                                                                  Seattle WA  98103
                                                                    (206) 419-4385

# Exhibit A



# Exhibit B

SEATTLE POLICE DEPARTMENT
GENERAL OFFENSE HARDCOPY   (ORIGINAL RELEASE)
SEATTLE LAW DEPT COPY

GO 2008-392375 (OPEN)                              1313 - 0 ASSLT-NONAGG

Related text page(s)

     Document: **NARRATIVE**
        Author: 6628 - LETIZIA, MICHELE G
     Related date/time: Oct-18-2008 2158
VICTIM INJURIES:                  None visible.  V/Clark complained of pain to
the side of his face.       -->
INCIDENTAL PROPERTY DAMAGE:    N/A      -->
SCENE PROCESSING:              N/A      -->
STATEMENTS TAKEN:              N/A      -->
NARRATIVE:
*****CHARGE OF ASSAULT (SMC 12A.06.010) IS REQUESTED AGAINST S/HULTON*****
*****CHARGES OF OBSTRUCTING A PUBLIC OFFICER (SMC 12A.16.010) ARE REQUESTED
AGAINST S/RACHNER AND S/CURRIE*****

On 10-18-2008 at about 1956 hrs while working uniformed patrol as 3E1 in
the City of Seattle, I responded to the 1500 BLK# of Boylston Ave to
investigate a report of someone being hit in the head with a golf ball.
When I arrived, I found no golfers in the area.  I did find a square (about
four square feet) of artificial turf taped to the sidewalk on the East side
of Boylston Ave, about 20 feet North of E Pike St.  V/Clark met me at
Boylston Ave/E Pine St and stated the following:
Clark was walking in the 1500 BLK# of Boylston Ave, near E Pike St.  Near
the NorthEast corner of Boylston Ave/E Pike St, Clark could see several
people standing around.  At about the time that Clark realized that the
group either were dressed like golfers or were carrying golf clubs, one
person in the group (later identified as S/Hulton) suddenly swung a golf
club, striking a ball.  Clark was struck in the face with the ball struck
by Hulton.  The ball that struck Clark was a high-density foam ball roughly
the size of a traditional golf ball.  Clark stated that the impact caused
pain to his face.  Clark then stopped and made eye contact with Hulton and
the group of golfers.  Hulton and the other golfers acknowledged Clark.
Then several of the golfers, including Hulton, began laughing at Clark and
"...heckled..." him.  Clark then called 9-1-1.
While officers were talking with Clark, a large group of people dressed in
golfing attire and carrying golf clubs passed us and began walking towards
the turf at Boylston Ave/E Pike St.  Officers contacted this group of
people, explained that we were conducting an investigation of an assault,
and asked for identification from the group.
S/Rachner was part of this group.  Rachner appeared to be intoxicated (for
example, despite at least three commands from me to keep his hands out of
his pockets, Rachner repeatedly placed his hands or fingers in his
pockets).  When I asked Rachner if he had I.D., Rachner answered "Yes".
When I asked Rachner to give me his I.D., Rachner stated that his I.D. was
in his wallet in his rear left pants pocket.  Believing that Rachner was
asking for permission to get his wallet (a common occurrence with
intoxicated persons), I directed Rachner to "...go ahead and remove your
I.D....".  Rachner refused.  Rachner told me that if I wanted his I.D., I
would have to get it myself.  I then removed Rachner's wallet from his

## SEATTLE POLICE DEPARTMENT
### GENERAL OFFENSE HARDCOPY  (ORIGINAL RELEASE)
### SEATTLE LAW DEPT COPY

**GO 2008-392375 (OPEN)**                    1313 - 0 ASSLT-NONAGG

pocket and attempted to hand it to him.  Rachner refused to accept his
wallet.  I explained to Rachner that I was not comfortable going through
his wallet, that I suspected that he would accuse me of stealing something
from his wallet if I opened it.  I explained to Rachner again that he
needed to remove his I.D. for me.  Rachner again refused to accept his
wallet.  Next, I placed Rachner's wallet in his left jacket pocket, again
explained that I was not going to open his wallet, and again requested his
I.D..  Rachner again refused.  Finally, I explained to Rachner that if he
refused to provide his I.D., he would be arrested for Obstructing.  I again
requested Rachner's I.D..  Rachner again refused to provide his I.D..  I
then arrested Rachner for Obstructing.
While officers were collecting I.D. cards from the initial group, a smaller
group of people similarly dressed or carrying golf clubs walked to our
location.  Since officers had not yet determined if they had the suspect,
officer(s) (including Sgt Dietrich) called out to this group and asked them
to walk over.  Most of the people in this group complied.  S/Currie did
not.  Instead, Currie turned around and began walking away.  Sgt Dietrich
again called out to Currie.  Currie again ignored the command and continued
walking away.  Sgt Dietrich was even more specific and said to Currie "You,
the golfer in the green sweater, come here."  Currie was in fact wearing a
green sweater and continued to ignore Sgt Dietrich's command.  At some
point, Currie even turned around and made eye contact with Sgt Dietrich.
When Sgt Dietrich made eye contact with Currie, Sgt Dietrich pointed at
Currie and motioned with his fingers/hand for Currie to walk to him (Sgt
Dietrich) while at the same time telling Currie, "Come here now or I will
be forced to arrest you."  Currie then turned around, continued walking
away from Sgt Dietrich, and left the immediate area.  A short time later,
Currie returned to the corner.  Sgt Dietrich recognized Currie from the
previous encounter and stopped him.  Sgt. Dietrich told Currie that his
conduct amounted to obstructing, and asked for his identification.  Currie
refused, saying he did not know why he needed to.  Sgt. Dietrich told
Currie that he could either identify himself at the scene or in the
precinct.  Currie still refused to identify himself, so Sgt. Dietrich
arrested Currie for Obstructing.
After officers had collected I.D. cards from the group, Clark responded to
our location.  Clark positively identified Hulton within the group as the
golfer who had actually swung the golf club and struck him in the face with
the ball.  Hulton was arrested for Assault.
All three suspects were transported to the precinct.  There, the suspects'
identities were verified.  Eventually, all three suspects were I&R'ed.
Before leaving the precinct, officers explained to the suspects that
charges would be requested through the Prosecuting Attorney's office, and
that that office would be contacting them regarding this.  All three
suspects stated that they understood.
Sgt Dietrich screened this incident.
Sgt Kuerschner screened the part of the incident involving Currie.--->

I hereby declare (certify) under penalty of perjury under the laws of the
State of Washington that this report is true and correct to the best of
my knowledge and belief (RCW 9A.72.085)

# Exhibit C

 **City of Seattle**

**Seattle Police Department**

~~R. Gil Kerlikowske~~, Chief of Police

April 9, 2009 ← Typo—letter was actually written in June 2009

Eric Rachner
1414 12th Avenue #319
Seattle, WA 98122

Records Request under Chapter 42.56 RCW: SPD #08-392375

Dear Mr. Rachner,

This letter is in response to your request for the following:

*Any and all recordings produced by the officer-worn recording device of Michelle Letizia (#6628) as well as 911 call recordings*

These recordings are both past our retention period and can no longer be obtained. Please note that the majority of 911 calls and videos are retained for a period of ninety (90) days

If you believe that the information furnished has been incorrectly withheld or redacted, you may file a written appeal with the Chief of Police within ten (10) business days from receipt of this letter. The appeal must include your name and address, a copy of the redacted document and a copy of this letter together with a brief statement identifying the basis of the appeal. Please mail or deliver your appeal to:

> Chief of Police
> 610 Fifth Avenue
> PO Box 34986
> Seattle, WA 98124-4986

If you have any questions regarding this response, please call the Public Disclosure Desk at (206) 684-5481.

Sincerely,

John Diaz
Interim Chief of Police

Tricia Colin
Administrative Specialist III
Public Request Unit

JD:tc

 Seattle Police Department, 610 Fifth Avenue, PO Box 34986, Seattle, WA 98124-4986
An equal employment opportunity, affirmative action employer.
Accommodations for people with disabilities provided upon request. Call (206) 233-7203 at least two weeks in advance.

 City of Seattle

**Seattle Police Department**
R. Gil Kerlikowske. Chief of Police

June 30, 2009

Eric Rachner
1414 12th Avenue #319
Seattle, WA 98122

Re:    Records Request Appeal SPD #08-392375

Dear Mr. Rachner:

The Seattle Police Department Legal Unit has received your public disclosure appeal
for recordings related to the investigation of SPD #08-392375.

Please see the enclosed copies of your December 23, 2008 and May 7, 2009 requests.
Pursuant to RCW 42.56.080, SPD is required to respond with *identifiable* records.

Your first request did not identify 911 recordings or recording devices of Michelle
Letizia or investigative records. SPD's retention schedule for recordings is 90 days.
The recordings were not preserved in response to your initial request.

We suggest requesting a copy of Seattle Municipal Court's records in the criminal case
number 530435. Recordings may have been preserved as part of the prosecutor's file.

If you have any questions, please call the Legal Unit at (206) 233-5141.

Sincerely,

John Diaz
Interim Chief of Police

Shawna Skjonsberg-Fotopoulos
Legal Advisor

JD: rlc

Enclosure



Seattle Police Department, 610 Fifth Avenue, PO Box 34986, Seattle, WA 98124-4986
An equal employment opportunity, affirmative action employer.
Accommodations for people with disabilities provided upon request. Call (206) 233-7203 at least two weeks in advance



# City of Seattle

Gregory J. Nickels, Mayor

**Seattle Police Department**
R. Gil Kerlikowske, Chief of Police

January 25, 2010

Eric Rachner
1414 12th Avenue #319
Seattle, WA 98122

Records Request under Chapter 42.56 RCW:  SPD in-car video and Activity log

Dear Mr. Rachner,

Enclosed is a copy of the Seattle Police Department (SPD) records you requested.

A search of SPD files resulted in an in-car video for Officer Letizia only. Our search resulted in no in-car videos found for Officer Clark or Officer Shoenberg. In addition, not officer worn audio was found related to this incident.

As you requested, we have also enclosed the Activity Log regarding Officer Letizia's in-car video.

We apologize for the delay in being able to provide you with the materials requested. We have waived our normal fee for in-car videos.

If you believe that the information furnished has been incorrectly withheld or redacted, you may file a written appeal with the Chief of Police within ten (10) business days from the date of receipt. Please include your name and address, a copy of the redacted document and a copy of this letter together with a brief statement identifying the basis of the appeal. Please mail or deliver your appeal to:

> Chief of Police
> 610 Fifth Avenue
> P.O. Box 34986
> Seattle, WA 98124-4986

If you have any further questions please call the Public Disclosure Desk at (206) 684-5481.

Sincerely,

John Diaz
Interim Chief of Police

Elizabeth J Mash
Administrative Specialist III
Public Request Unit

JD:em



Seattle Police Department, 610 Fifth Avenue, PO Box 34986, Seattle, WA 98124-4986
An equal employment opportunity, affirmative action employer.
Accommodations for people with disabilities provided upon request.  Call (206) 233-7203 at least two weeks in advance.

# Exhibit D



Search By

- Date Range
- Event Type
- User ID

| Log Time | Event |
| --- | --- |
| 12/30/2008 11:43:20 PM | Integrity Check |
| 11-04-2008 7:42:44 AM | Start |
| 11/01/2008 3:22:04 AM | Playback |
| 11/01/2008 2:52:04 AM | Start |
| 11/22/2008 1:35:51 PM | Jukebox |
| 11/13/2008 11:27:42 PM | Playback |
| 11/13/2008 11:26:45 PM | Move Disk and Load |
| 10/13/2008 11:25:31 PM | Start |
| 10/13/2008 11:25:31 PM | Load |

*(handwritten annotations)*

Video disappeared from system 12/30/08 but OPA copy still exists

OPA copy 11/4/08 created

Dittrich

Exit

# View Video Logs

**Search By**
- Date Range  From [ ]  To [ ]
- Event Type
- User ID

**Search**

| Log Time | Event | User | Log |
|---|---|---|---|
| 12/31/2008 12:21:01 AM | Integrity Check | System | Integrity: --changing status from 0 to 2 |
| 11/04/2008 09:28:45 AM | Export | 7065 | IS |
| 10/23/2008 11:34:45 PM | UnRetain | System | Move from E:\tp\video\s7405@20081018200500.mpg to f:\videofiles\7405\... |
| 10/19/2008 04:18:45 AM | Moved Around on Raid | System | Retain by event definition |
| 10/19/2008 04:17:47 AM | Retain | System | Upload from network |
| 10/19/2008 04:17:47 AM | Upload | 7405 | |

**Log**

Integrity: --changing status from 0 to 2

Note: Only the first 1000 records will be shown.

Print Detail Reports    Print    Print Preview    Exit

*(handwritten annotations)*
- video was lost OPA, 8H 11 03.88.05
- Indicates 12/31/08, 8H 11 on copy
- IS — OPA copy created
- Badge #7405 is Emily Clarke



# Exhibit E

Eric Rachner v. SPD, Complaint, Exhibit E, page 51 out of a 58 page list of Videos Lost from SPD 12/2008

| | | | |
|---|---|---|---|
| 4047@20081018040639, | 7078@20081018131536, | 6090@20081018193049, | 6899@20081018221357, |
| 5786@20081018041127, | 6987@20081018131734, | 7461@20081018193117, | 6715@20081018221414, |
| 7437@20081018041209, | 6992@20081018131954, | 6742@20081018193153, | 6196@20081018221539, |
| 6889@20081018041617, | 6890@20081018132127, | 6899@20081018193238, | 6963@20081018221956, |
| 7414@20081018041652, | 6986@20081018132101, | 6963@20081018193511, | 6899@20081018222006, |
| 7414@20081018042217, | 6918@20081018132122, | 6750@20081018193535, | 6976@20081018222102, |
| 6705@20081018043124, | 6783@20081018134910, | 7434@20081018193600, | 7423@20081018222154, |
| 7459@20081018043134, | 6856@20081018140334, | 7405@20081018193731, | 7465@20081018222337, |
| 6894@20081018044702, | 6987@20081018141532, | 6750@20081018194057, | 7467@20081018223024, |
| 4047@20081018050025, | 6992@20081018142528, | 6971@20081018194619, | 7423@20081018223412, |
| 6894@20081018051643, | 6246@20081018143026, | 7434@20081018194834, | 6661@20081018223711, |
| 7459@20081018052417, | 5571@20081018143125, | 7405@20081018195100, | 6751@20081018224100, |
| 6983@20081018052710, | 6856@20081018143240, | 6833@20081018195204, | 6833@20081018224131, |
| 6894@20081018054125, | 7078@20081018143837, | 7434@20081018195217, | 7434@20081018224537, |
| 6889@20081018054239, | 6246@20081018144829, | 7423@20081018195236, | 5689@20081018224604, |
| 7459@20081018054501, | 6962@20081018144910, | 7465@20081018195427, | 6833@20081018225155, |
| 4047@20081018055528, | 7447@20081018150117, | 6742@20081018195719, | 7423@20081018225959, |
| 7465@20081018055809, | 7078@20081018150338, | 7461@20081018200438, | 6833@20081018230325, |
| 6894@20081018060846, | 6992@20081018150344, | 7405@20081018200500, | 6370@20081018230747, |
| 7452@20081018061255, | 6962@20081018150453, | 6661@20081018201158, | 4957@20081018230809, |
| 7452@20081018063430, | 6750@20081018150621, | 7465@20081018201441, | 6780@20081018231337, |
| 6894@20081018064318, | 6750@20081018150726, | 6709@20081018201513, | 7434@20081018231533, |
| 6673@20081018070122, | 6718@20081018151552, | 5574@20081018201621, | 7423@20081018231534, |
| 6673@20081018070846, | 6246@20081018161147, | 7434@20081018201643, | 6780@20081018231817, |
| 6894@20081018071546, | 6890@20081018162241, | 6090@20081018201726, | 6193@20081018231823, |
| 6894@20081018072201, | 6890@20081018162943, | 6938@20081018201905, | 6661@20081018231841, |
| 7452@20081018073241, | 6856@20081018165255, | 6742@20081018201912, | 6780@20081018231855, |
| 6894@20081018074425, | 6987@20081018165720, | 6926@20081018201926, | 6889@20081018232025, |
| 6894@20081018080651, | 7447@20081018170367, | 7461@20081018201943, | 6090@20081018232204, |
| 6889@20081018083112, | 6962@20081018170502, | 6709@20081018202335, | 6976@20081018232259, |
| 6673@20081018083256, | 6962@20081018170847, | 6709@20081018202433, | 6976@20081018232311, |
| 6673@20081018083351, | 6992@20081018171354, | 6715@20081018202442, | 7423@20081018232315, |
| 7414@20081018083528, | 6856@20081018171544, | 5969@20081018202544, | 6709@20081018232621, |
| 7452@20081018084039, | 6856@20081018172235, | 6938@20081018202546, | 7465@20081018233347, |
| 6673@20081018085058, | 6986@20081018172507, | 6709@20081018202639, | 6196@20081018234029, |
| 4746@20081018092833, | 6992@20081018172945, | 6833@20081018202922, | 7467@20081018234438, |
| 6889@20081018094457, | 6750@20081018173108, | 6941@20081018203023, | 6973@20081018234602, |
| 7437@20081018095040, | 6718@20081018173156, | 4901@20081018203109, | 3564@20081018235319, |
| 7459@20081018100527, | 6941@20081018173203, | 7461@20081018203926, | 3564@20081018235356, |
| 6889@20081018100746, | 5011@20081018173207, | 6938@20081018204006, | 3564@20081018235432, |
| 7459@20081018103455, | 7447@20081018173331, | 7434@20081018204013, | 6742@20081018235539, |
| 7459@20081018104757, | 7078@20081018173453, | 6971@20081018204118, | 6715@20081018235647, |
| 7452@20081018110432, | 7078@20081018173538, | 6751@20081018204637, | 6370@20081018235828, |
| 6246@20081018113402, | 6987@20081018174930, | 6751@20081018204827, | 6976@20081019000000, |
| 6962@20081018113544, | 5514@20081018175821, | 6294@20081018205018, | 6827@20081019000226, |
| 6941@20081018114448, | 5571@20081018180626, | 6963@20081018205137, | 6833@20081019000239, |
| 5571@20081018120023, | 5571@20081018180642, | 6828@20081018205309, | 6833@20081019000559, |
| 6992@20081018120623, | 6742@20081018180910, | 6742@20081018210948, | 6193@20081019000855, |
| 5571@20081018121031, | 6750@20081018181849, | 7423@20081018211551, | 7434@20081019001039, |
| 5571@20081018121412, | 6610@20081018182120, | 3564@20081018213253, | 6370@20081019001251, |
| 6718@20081018121619, | 6661@20081018182207, | 6751@20081018213558, | 6193@20081019001722, |
| 6986@20081018121624, | 5571@20081018182813, | 7467@20081018214225, | 7434@20081019001902, |
| 6856@20081018122233, | 5571@20081018182825, | 5118@20081018214307, | 6963@20081019002145, |
| 5738@20081018122247, | 5571@20081018182848, | 6294@20081018214623, | 7461@20081019002353, |
| 6718@20081018123012, | 5571@20081018182958, | 6090@20081018215134, | 4901@20081019002415, |
| 6987@20081018123049, | 7078@20081018183147, | 6971@20081018215252, | 6196@20081019002507, |
| 6992@20081018123100, | 5118@20081018184831, | 6751@20081018220035, | 6973@20081019002636, |
| 5571@20081018125400, | 6941@20081018184908, | 6971@20081018220416, | 6833@20081019003450, |
| 6962@20081018125412, | 6610@20081018185234, | 7434@20081018220742, | 7465@20081019004713, |
| 6941@20081018130049, | 6750@20081018192235, | 6971@20081018221048, | 6715@20081019005649, |
| 7447@20081018130742, | 6628@20081018192743, | 6833@20081018221049, | 7461@20081019010357, |

Key: in the format bbbb@yyyymmddhhmmss, <bbbb> means the officer badge number, and
<yyyymmddhhmmss> means the year, month, day, and time when the recording started

EXHIBIT 2

RECEIVED

11 OCT -7 AM 11:14

CITY OF SEATTLE
MAYOR'S OFFICE

# IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
# IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| Rachner | NO.  11-2-34597-1    SEA |
| | Order Setting Civil Case Schedule (*ORSCS) |
| vs                                    Plaintiff(s) | |
| Seattle Police Department | ASSIGNED JUDGE  Heller _____ 52 |
| | FILE DATE:                          10/05/2011 |
| Defendant(s) | TRIAL DATE:                        03/25/2013 |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

## I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this **Order Setting Case Schedule** (**Schedule**) on the Defendant(s) along with the **Summons and Complaint/Petition.** Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the **Summons and Complaint/Petition** or (2) service of the Defendant's first response to the **Complaint/Petition**, whether that response is a **Notice of Appearance**, a response, or a Civil Rule 12 (CR 12) motion. The **Schedule** may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

*"I understand that I am required to give a copy of these documents to all parties in this case."*

_____ | _____
         Print Name                                              Sign Name

## I. NOTICES (continued)

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLR*] -- especially those referred to in this *Schedule*. In order to comply with the *Schedule*, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [*See KCLCR 26*], and for meeting the discovery cutoff date [*See KCLCR 37(g)*].

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**
A filing fee of **$230** must be paid when any answer that includes additional claims is filed in an existing case.

**KCLCR 4.2(a)(2)**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule. The court will review the confirmation of joinder document to determine if a hearing is required. If a Show Cause order is issued, all parties cited in the order must appear before their Chief Civil Judge.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of <u>all parties and claims</u> is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of <u>all parties and claims</u> is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk is authorized by KCLCR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING <u>AND</u> TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and cross-claims have been filed. If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must pay a $220 arbitration fee.** If a party seeks a trial de novo when an arbitration award is appealed, a fee of $250 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
All parties will be assessed a fee authorized by King County Code 4.71.050 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements <u>and/or</u> Local Civil Rule 41.

**King County Local Rules are available for viewing at www.kingcounty.gov/courts/clerk.**

## II. CASE SCHEDULE

| CASE EVENT | DEADLINE or EVENT DATE | Filing Needed |
|---|---|---|
| Case Filed and Schedule Issued. | Wed 10/05/2011 | * |
| Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [See KCLMAR 2.1(a) and Notices on Page 2]. **$220 arbitration fee must be paid** | Wed 03/14/2012 | * |
| DEADLINE to file Confirmation of Joinder if not subject to Arbitration. [See KCLCR 4.2(a) and Notices on Page 2]. | Wed 03/14/2012 | * |
| DEADLINE for Hearing Motions to Change Case Assignment Area. [See KCLCR 82(e)] | Wed 03/28/2012 | |
| DEADLINE for Disclosure of Possible Primary Witnesses [See KCLCR 26(b)]. | Mon 10/22/2012 | |
| DEADLINE for Disclosure of Possible Additional Witnesses [See KCLCR 26(b)]. | Mon 12/03/2012 | |
| DEADLINE for Jury Demand [See KCLCR 38(b)(2)]. | Mon 12/17/2012 | * |
| DEADLINE for Setting Motion for a Change in Trial Date [See KCLCR 40(e)(2)]. | Mon 12/17/2012 | * |
| DEADLINE for Discovery Cutoff [See KCLCR 37(g)]. | Mon 02/04/2013 | |
| DEADLINE for Engaging in Alternative Dispute Resolution [See KCLCR 16(b)]. | Mon 02/25/2013 | |
| DEADLINE for Exchange Witness & Exhibit Lists & Documentary Exhibits [See KCLCR 4(j)]. | Mon 03/04/2013 | |
| DEADLINE to file Joint Confirmation of Trial Readiness [See KCLCR 16(a)(2)] | Mon 03/04/2013 | * |
| DEADLINE for Hearing Dispositive Pretrial Motions [See KCLCR 56; CR 56]. | Mon 03/11/2013 | |
| Joint Statement of Evidence [See KCLCR (4)(k)]. | Mon 03/18/2013 | * |
| DEADLINE for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file Proposed Findings of Fact and Conclusions of Law with the Clerk) | Mon 03/18/2013 | * |
| Trial Date [See KCLCR 40]. | Mon 03/25/2013 | |

### III. ORDER

Pursuant to King County Local Civil Rule 4 [KCLCR 4], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Civil Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this Order Setting Civil Case Schedule and attachment on all other parties.

DATED:   10/05/2011

_Richard F. McDermott_

PRESIDING JUDGE

IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

**READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE**
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule.  The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:**  If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:**  Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges.  The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx .

**CASE SCHEDULE AND REQUIREMENTS**
Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

**THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.**

**A. Joint Confirmation regarding Trial Readiness Report:**
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g. interpreters, equipment, etc.).

The form is available at http://www.kingcounty.gov/courts/superiorcourt.aspx .  If parties wish to request a CR 16 conference, they must contact the assigned court.  Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding said report.

**B. Settlement/Mediation/ADR**
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand.  Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held.  FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

**C. Trial:**  Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court.  The Friday before trial, the parties should access the King County Superior Cour website http://www.kingcounty.gov/courts/superiorcourt.aspx  to confirm trial judge assignment. Information can also be obtained by calling (206) 205-5984.

**MOTIONS PROCEDURES**

**A. Noting of Motions**

**Dispositive Motions:**  All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge.  The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules.  Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part.  The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Nondispositive Motions:** These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered. All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements. Rather than noting a time of day, the Note for Motion should state "Without Oral Argument." Local Civil Rule 7 governs these motions, which include discovery motions. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge. All other motions should be noted and heard on the Family Law Motions calendar. Local Civil Rule 7 and King County Family Law Local Rules govern these procedures. The local rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Emergency Motions:**   Under the court's local civil rules, emergency motions will be allowed only upon entry of an Order Shortening Time. However, emergency discovery disputes may be addressed by telephone call and without written motion, if the judge approves.

## B. Original Documents/Working Copies/ Filing of Documents

**All original documents must be filed with the Clerk's Office.** Please see information on the Clerk's Office website at www.kingcounty.gov/courts/clerk regarding the new requirement outlined in LGR 30 that attorneys must e-file documents in King County Superior Court. The exceptions to the e-filing requirement are also available on the Clerk's Office website.

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge. The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom. Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator. On June 1, 2009 you will be able to submit working copies through the Clerk's office E-Filing application at www.kingcounty.gov/courts/clerk.

**Service of documents.** E-filed documents may be electronically served on parties who opt in to E-Service within the E-Filing application. The filer must still serve any others who are entitled to service but who have not opted in. E-Service generates a record of service document that can be e-filed. Please see information on the Clerk's office website at www.kingcounty.gov/courts/clerk regarding E-Service.

**Original Proposed Order:** Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion. Do not file the original of the proposed order with the Clerk of the Court. Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order.

**Presentation of Orders:** All orders, agreed or otherwise, must be presented to the assigned judge. If that judge is absent, contact the assigned court for further instructions. If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

**Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the assigned judge or in the Ex Parte Department.** Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department. **If final order and/or formal proof are entered in the Ex Parte Department, counsel is responsible for providing the assigned judge with a copy.**

*C.   Form*

Memoranda/briefs for matters heard by the assigned judge may not exceed twenty four (24) pages for dispositive motions and twelve (12) pages for nondispositive motions, unless the assigned judge permits over-length memoranda/briefs in advance of filing.  Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

*IT IS SO ORDERED.  FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS.  PLAINTIFF/PEITITONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.*

_Richard F. McDermott_

---

PRESIDING JUDGE

EXHIBIT 3

RECEIVED

11 OCT -7 AM11: 14

CITY OF SEATTLE
MAYOR'S OFFICE

SUPERIOR COURT OF WASHINGTON
COUNTY OF KING

| | |
|---|---|
| Rachner | NO. 11-2-34597-1 SEA |
| VS | |
| Seattle Police Department | CASE INFORMATION COVER SHEET AND AREA DESIGNATION |

CAUSE OF ACTION

**(TTO) -**    TORT, NON-MOTOR VEHICLE

AREA DESIGNATION

**SEATTLE -**    Defined as all King County north of Interstate 90 and including all of Interstate 90 right of way, all of the cities of Seattle, Mercer Island, Issaquah, and North Bend, and all of Vashon and Maury Islands.

EXHIBIT 4

RECEIVED

11 OCT -7 AM 11: 14

CITY OF SEATTLE
MAYOR'S OFFICE

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

ERIC RACHNER, an individual, and
DAVID HULTON, an individual,

                    Plaintiffs,

vs.

SEATTLE POLICE DEPARTMENT and
CITY OF SEATTLE, a Washington
municipal corporation; MICHELE LETIZIA
and JANE DOE LETIZIA and the marital
community composed thereof; BRETT
SCHOENBERG and JANE DOE
SCHOENBERG, and the marital community
composed thereof; and SETH DIETRICH
and JANE DOE DIETRICH and the marital
community composed thereof;
                    Defendants.

No. 11-2-34597-1 SEA

SUMMONS

TO THE DEFENDANTS:

A lawsuit has been started against you in the above entitled court by Eric Rachner and David Hulton, plaintiffs. Plaintiffs' claim is stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons, excluding the day of service,

SUMMONS - 1

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA 98103
(206) 419-4385

or a default judgment may be entered against you without notice.  A default judgment is one where plaintiff is entitled to what he or she asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

You may demand that the plaintiff file this lawsuit with the court.  If you do so, the demand must be in writing and must be served upon the person signing this summons.  Within 14 days after you serve the demand, the plaintiff must file this lawsuit with the court, or the service on you of this summons and the complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is issued pursuant to rule 4 of the superior Court Civil Rules of the State of Washington.

DATED this 5th day of October, 2011.

CLEVELAND STOCKMEYER PLLC

By: _Cleveland Stod_____
        Cleveland Stockmeyer, WSBA #21636

8056 Sunnyside Ave. N.
Seattle, Washington  98103
(206) 419-4385

Attorney for Plaintiffs Eric Rachner and David Hulton

SUMMONS - 2

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

EXHIBIT 5

Hon. Bruce Heller

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

|  |  |
|---|---|
| ERIC RACHNER, an individual, and DAVID HULTON, an individual, | ) ) ) |
| Plaintiffs, | ) No.    11-2-34597-1SEA ) |
| vs. | ) NOTICE OF APPEARANCE ) |
| SEATTLE POLICE DEPARTMENT and CITY OF SEATTLE, a Washington municipal corporation; MICHELE LETIZIA and JANE DOE LETIZIA and the marital community composed thereof; BRETT SCHOENBERG and JANE DOE SCHOENBERG, and the marital community composed thereof; and SETH DIETRICH and JANE DOE DIETRICH and the marital community composed thereof; | ) [CLERK'S ACTION REQUIRED] ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

TO:     Clerk of the above-entitled court; and

TO:     Eric Rachner and David Hulton above-named, and their counsel, Cleveland Stockmeyer:

        PLEASE NOTE that defendants, Seattle Police Department, City of Seattle, Michele
Letizia, Brett Schoenberg and Seth Dietrich by and through their undersigned attorney, and without
waiving any objections as to improper service, process, jurisdiction, venue, or any other CR 12

NOTICE OF APPEARANCE - 1

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

1   insufficiencies, enter their appearance in this action and request that all future papers and pleadings

2   in this matter, except original process, be served on this attorney at the address stated below.

3   Please make note that the Seattle City Attorney's Office **mailing address** is:

4       PO Box 94769
        Seattle, WA  98124-4769

5

6   and that the **street/hand-delivery/messenger address** is:

7       600 Fourth Ave., 4th Floor
        Seattle, WA  98104

8   The post office advises that any **mail** being delivered via the United States Postal Service

9   having an address other than the above-referenced PO Box will be returned to the sender.

10      DATED this 14th day of October, 2011.

11                          PETER S. HOLMES
                            Seattle City Attorney
12
                    By:     s/Brian G. Maxey
13                          Assistant City Attorney
                            State Bar Number 33279
14                          Telephone: (206) 733-9001
                            E-mail:  brian.maxey@seattle.gov
15
                            s/Dominique' L. Jinhong
16                          Assistant City Attorney
                            State Bar Number 28293
17                          Telephone: (206) 684-8251
                            E-mail: dominique.jinhong@seattle.gov
18
                            Seattle City Attorney's Office
19                          600 Fourth Avenue, 4th Floor
                            PO Box 94769
20                          Seattle, WA  98124-4769
                            Fax:  (206) 684-8284
21
                            Attorneys for Defendants
22

23

NOTICE OF APPEARANCE - 2

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

EXHIBIT 6

